hGREMILLION, Judge.
The defendant, Harmony Corporation, appeals a decision of the hearing officer, finding that the plaintiff, Robert Nichols, suffered a mental injury after being exposed to a chemical while in the course and scope of his employment. The hearing officer awarded Nichols temporary total disability benefits from the date of his injury until further notice. We reverse, set aside, and render accordingly.
FACTS
Nichols, an iron worker for Harmony Corporation, was working at the Cytec Chemical Refinery, in Jefferson, Louisiana, when a chemical spill occurred on January 22, 1995. Nichols was exposed for forty-five to sixty minutes to acrylonitrile, also known as vinyl cyanide, when it was released into the air near [2where he was working. As a result of this exposure, Nichols has complained of a burning sensation in his forehead, light-head-edness, dizziness, shortness of breath, blurred vision, and a stinging sensation in his chest and legs. Since this incident, Nichols has remained unemployed.
Nichols was examined by eight different doctors, plus he was treated at the emergency room twice because of his symptoms. He was seen by four doctors specializing in occupational medicine, an internist specializing in lung diseases, and a neurologist. Although none of these doctors were able to specifically diagnose the cause of Nichols’ complaints, they did concur in finding that his symptoms were inconsistent with acrylonitrile exposure. All of the doctors stated that exposure to this chemical would not produce chronic symptoms such as those Nichols complained of. Nichols was also seen by an ear, nose, and throat specialist, an ophthalmologist, and two emergency room doctors. These doctors were also unable to explain the cause of Nichols’ symptoms. Nichols was examined by a neuropsychologist, who determined that Nichols suffered from cognitive inefficiency, depression, anxiety, and an underlying passive/aggressive personality disorder.
On May 25, 1995, Nichols filed a disputed claim for compensation claiming that he had been injured as a result of the chemical exposure and that he had not received workers’ compensation benefits. Harmony Corporation answered claiming that Nichols’ injury was temporary and had not resulted in a loss of time in excess of seven days. It further alleged that Nichols required no further medical treatment.
IgA hearing was held before the hearing officer on June 26,1996. Prior to testimony, several stipulations were agreed to by the parties: Nichols was employed by Harmony Corporation on the date of the incident, January 22, 1995; the chemical released was acrylonitrile; following the release, Nichols felt fight-headed and dizzy; his average weekly wage was $875.89; his workers’ compensation rate would be $323.00 per week; and that the depositions of the medical doctors reflected that Nichols suffered no physical injury. After considering the testimony and the deposition of Dr. William Black, a neuropsychologist, the hearing officer, in oral reasons, held that Nichols suffered an injury as a result of the chemical exposure and *703 found a causal connection between the incident and Nichols’ resulting disability. The hearing officer ordered Harmony Corporation to pay Nichols weekly benefits starting from the date of the incident. Harmony Corporation appeals this decision.
ISSUES
On appeal, Harmony Corporation specifies three assignments of error. It argues that the hearing officer erred in finding that Nichols sustained an injury during the course and scope of his employment as a result of the acrylonitrile spill on January 22,1995. It also argues that the hearing officer erred in finding that Nichols sustained an injury which was causally related to the spill, and in awarding indemnity benefits.
DISCUSSION
In order to recover disability benefits for a mental injury caused by a work-related injury, an employee must demonstrate the injury by clear and convincing evidence. La. R.S. 23:1021(7)(c). To prove a matter by clear and | convincing evidence, the employee must demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. Bundren v. Affiliated Nursing Homes, Inc., 94-808 (La.App. 3 Cir. 2/1/95); 649 So.2d 1177.
The appellate standard of review is well known. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). If upon review, the appellate court finds that a reversible error of law or a manifest error concerning the determination of a material fact was made by the trial court, then the court is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In his oral reasons, the hearing officer stated:
[T]he Court finds that there is a causal connection between the episode and his resulting disability. And the Court is convinced, and it would appear clear to me that his being unemployed at this time is causally connected to the episode. In fact, when considering the entire picture I find that he has made a prima facie ease to me, and I am going to enter an order ordering the weekly benefits....
Because we find that the hearing officer applied the wrong burden of proof, we will undertake a de novo review. After reviewing the record, we find that Nichols failed to prove by clear and convincing evidence that he suffered a mental injury as a result of his exposure to acrylonitrile.
The outcome of this case turns on the deposition testimony of Dr. Black, a neurop-sychologist, since none of the other doctors were able to relate Nichols’ symptoms to his exposure to acrylonitrile. After interviewing Nichols and running him through a battery of tests, Dr. Black determined that he had a cognitive inefficiency, was depressed and anxious, and had an underlying passive/aggressive | ¡personality disorder. Dr. Black opined that Nichols’ cognitive inefficiency preexisted January 22, 1995, that it had probably existed all of Nichols’ life. He also testified that he thought Nichols was less depressed and anxious than he reported, finding inconsistencies between his test results and his appearance during the evaluation. Dr. Black found other inconsistencies and variances between Nichols’ test results, but he did not feel that Nichols was actively fabricating the results, or malingering. However, he did feel that Nichols was exaggerating the results, possibly for the purpose of secondary gain.
Although he did not have any of Nichols’ prior medical records, Dr. Black did not feel that there was a probable, causal relationship between Nichols’ current neurobehavioral status and his medical history. Wlnle he admitted that depression and emotional distress could rise to the level of injuries, Dr. Black was unsure if they did in this instance. He testified that because he had no prior information on Nichols, he could not causally relate his condition to the chemical spill. However, if he assumed as true Nichols’ statement that he had no mental problems prior to the January 22, 1995 episode, then he said there would seem to be a causal relationship between his condition and his exposure to the acrylonitrile. Dr. Black *704 opined that Nichols’ depression and anxiety were insufficient to interfere with his ability to return to work; however, these factors combined with his cognitive inefficiency and his belief that he is disabled, resulted in his inability to work. Dr. Black did admit that Nichols’ depression might be related to the fact that he was unemployed, and that his depression could be alleviated once he returned to work.
[¡¡Dr. Black recommended that Nichols undergo a thorough psychiatric evaluation and treatment by a psychiatrist who could make both a definitive diagnosis and utilize a variety of psychotropic medicines to treat his symptoms. Without the treatment, he did not feel it likely that Nichols would return to meaningful work. He felt that Nichols would be unable to return to his position with Harmony Corporation due to his fear of chemicals and working in the chemical industry, although this fear was not listed in his notes. Dr. Black admitted that during testing, Nichols’ anxiety was related to his day-to-day activities and not to the chemical spill. Dr. Black stated that he did not feel that Nichols should return to, employment where he would have to make decisions which would impact on the safety of other persons. He did not think that Nichols could work in an environment which was not highly structured and would not require rather routinized activities.
The testimony of several other doctors concurred in the finding that Nichols should not have suffered the chronic conditions he complains of. Testing done after the spill determined that the chemical exposure was under twenty parts per million, which Dr. Homi Cooper, an occupational medicine physician, described as a low exposure in open air. Dr. Cooper testified that for a person exposed to this type of dosage for forty-five to sixty minutes, he would expect them to have complaints for no more than one or two days. Dr. Roy Regan, a general surgeon practicing occupational medicine, treated Nichols on January 24, 1995. He described acrylonitrile as being similar to cyanide, in that it is either all or nothing: “Either it kills you or it doesn’t.” Dr. Regan stated that if a person was exposed, he should be treated as an emergency as soon as possible. He stated that it would be rather ^questionable that the person exposed would need treatment two days later. Dr. Douglas Swift, an occupational medicine physician, who treated other persons exposed at the same time as Nichols, stated that the half life of acryloni-trile is eight hours. He stated that the symptoms of the other patients he treated ranged from detection of the odor of acrylon-itrile to irritation of the eyes, nose, and throat, and a couple had pulmonary symptoms with a cough. He did not describe any patients with symptoms similar to Nichols.
Since the chemical spill, Nichols testified that he has suffered from dizziness, light-headedness, burning headaches, blurred vision, and numbness in his forehead. These symptoms become worse after physical exertion. Nichols stated that he wanted to work, although he was unsure if he could perform physical work due to his condition. He did not think that he could work off of the ground, as he had for Harmony Corporation, because of his dizziness, and because he was afraid that he could possibly injure himself or others. Nichols testified that he had applied for employment, but had not been hired. He stated that he was willing to return to work at a chemical plant.
Nichols testified that the two months prior to the hearing, he had been performing roofing work. He stated that he has three coworkers to help him and that he splits the money with them since he is physically unable to do the job. Nichols testified that he will occasionally work on a roof, but because he becomes dizzy, he has to return to the ground in order to take a break. He testified that because the heat affects him, he usually only works in the mornings, and that the longest he typically works is until 11:00 a.m. He stated that he had only worked eight or nine partial | sdays, and that the other workers do more work than him. Nichols testified that he earns $500-$600 per month performing this type of work.
In rebuttal, Harmony Corporation introduced the testimony of Robert LeBlanc, a private investigator, who performed surveillance on Nichols between May 21-24, 1996. LeBlanc testified that Nichols was roofing a residence in Alexandria, Louisiana, and that *705 during the four days, Nichols performed the same amount of work as the other workers. He also testified that Nichols worked up on the roof in the afternoons, when the temperatures ranged from 90° to 92°.
After reviewing the evidence, we find that Nichols has failed to prove by clear and convincing evidence that his mental injury is causally related to his exposure to acryloni-trile. None of the examining doctors could relate Nichols’ symptoms to his chemical exposure, and Dr. Black also failed to find a causal relationship between the two. Further, Dr. Black recommended that Nichols be evaluated by a psychiatrist so that a definitive diagnosis could be made. Thus, we find that Dr. Black’s diagnosis fails to satisfy Subparagraph (d) of La.R.S. 23:1021(7), which provides:
No mental injury or illness shall be com-pensable under either Subparagraph (b) or (c) unless the mental injury or illness is diagnosed by a licensed psychiatrist or psychologist and the diagnosis of the condition meets the criteria as established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
In addition, when taking into consideration the testimony of LeBlanc, we find that Nichols has failed to prove that the existence of his mental condition is highly probable. Nichols testified that he was physically unable to perform roofing, |9that he becomes dizzy and disoriented when up on the roof, and that he does not work in the afternoons because of the heat. All three of these statements were disputed by LeBlanc’s surveillance. Thus, we find Nichols’ credibility seriously questioned by LeBlanc’s testimony. For the foregoing reasons, we find that Nichols failed to prove the existence of a mental injury by clear and convincing evidence.
CONCLUSION
For the foregoing reasons, the decision of the hearing officer is reversed and set aside. It is now ordered, adjudged, and decreed that there be judgment herein in favor of the defendant-appellant, Harmony Corporation, and dismissing the claim of the plaintiff-appellee, Robert Nichols. The costs of this matter are assessed against Robert Nichols.
REVERSED AND RENDERED.