| .AMY, J.
In this workers’ compensation matter, Plaintiff appeals the workers’ compensation judge’s denial of her claim for workers’ compensation benefits and, additionally, reiterates her request for penalties and attorney’s fees. For the following reasons, we affirm.
Factual and Procedural Background
On or about October 14, 1992, the plaintiff, Helen Cole, suffered an injury while in the course and scope of her employment with the defendant, Langston Companies, Inc. At the time of that injury, Plaintiff was employed as a strapper, which position, according to Plaintiffs testimony, required her to place straps into a bag and zigzag them on a “juki” machine, depressing the pedal of the machine with her foot and using one hand to operate the lever of the machine and the other hand to move the material. Additionally, in performing the job, Plaintiff would remove the bag from the machine and throw it to the ground approximately three feet away from |2her work area. Further, at times, Plaintiff would load her own material and straps onto her table, so as to enable her to satisfy her quota more quickly. At trial, Plaintiff testified that, on the morning of the accident, she “turned to the left to pull the bag toward [her], and [she] heard something pop in [her] neck.” In initially diagnosing Plaintiffs condition on January 11, 1994, her treating orthopedic surgeon, Dr. Stephen J. Flood, found that there “was evidence of cervical and lumbar disc disease.” Pursuant to his August 26, 1997 evaluation of Plaintiffs condition, Dr. Flood diagnosed Plaintiff with “cervical syndrome [,] meaning continued pain in the neck and lumbar HNP at L5-S1.”
Although Plaintiff collected workers’ compensation benefits for some time after the accident, those benefits were terminated by Defendant. Throughout the course of these proceedings, Plaintiff has urged that she remains disabled and is, therefore, entitled to a reinstatement of benefits. Additionally, Plaintiff has sought *898 penalties and attorney’s fees, alleging that Defendant was arbitrary and capricious in terminating her benefits, in failing to provide any meaningful vocational rehabilitation, and in failing to inform her of the physical requirements of a modified position offered to her. After a trial on the merits, the workers’ compensation judge ruled in favor of Defendant, dismissing all of Plaintiffs claims. From that judgment, Plaintiff has perfected the instant appeal and presents the following assignments of error for our review:
1. The trial court erred by applying the wrong standard with respect to an employee’s entitlement to vocational rehabilitation under LSA-R.S. 28:1226.
|a2. The trial court manifestly erred in finding that box tacking did not exceed Helen Cole’s physical capabilities.
8. The trial court manifestly erred in finding that Helen Cole could perform the i’equirements of the offered box tacking position despite her use of prescription narcotics.
4. The trial court manifestly erred in finding that Helen Cole was required to investigate the appropriateness of the offered box tacking position.
DISCUSSION
In her oral reasons for ruling, the workers’ compensation judge stated as follows:
“Section 1226 of the Workers’ Compensation Act does not require rehabilitation services when the injured worker can earn ninety percent (90%) or more of her pre-injury wage.”
Plaintiff contends that the workers’ compensation judge applied the incorrect standard in determining whether she was entitled to further rehabilitation services.
Regarding entitlement to vocational rehabilitation, La.R.S. 23:1226(A) provides as follows:
When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services.
Plaintiff urges that she “did show, by her testimony and her physician’s records, that she is incapable of returning to her previous position as a strapper for Langston.” Defendant, however, urges that “reference in the opinion to 90% of the pre-accident wage was harmless error, as it was undisputed, that the job offer made by Lang-ston and refused by Appellant in fact paid the same as her pre-accident wage.” Defendant further submits that the workers’ compensation judge’s “ultimate conclusion that |4Cole failed to sustain the burden of proving that she was unable to earn ‘the threshhold [sic] amount necessary to invoke the provisions of Section 1226 of the Act’ was correct.”
Regarding the scope of our exercise of appellate jurisdiction, La . Const, art. V, § 10(B) provides, in pertinent part, that “appellate jurisdiction of a court of appeal extends to law and facts.” We conduct a de novo review of the record only when we find that the trial court committed either manifest error in its factual determinations or reversible error of law. See Rosell v. ESCO, 549 So.2d 840 (1989). See also Nichols v. Harmony Industrials, 96-1461 (La.App. 3 Cir. 4/2/97); 692 So.2d 701.
Although the workers’ compensation judge did incorrectly state the law regarding entitlement to vocational rehabilitation services, both parties stipulated that Defendant offered Plaintiff a position earning wages equivalent to those earned prior to the injury. In view of the workers’ compensation judge’s determination that Plaintiff could perform the offered position, a determination which, as discussed below, was supported by the evidence, Plaintiff has failed to establish that she is unable to earn wages equal to those earned prior to her injury. Accordingly, Plaintiff has “failed to sustain the burden of proving that she is unable to earn the threshold amount necessary to ... invoke the provi *899 sions of Section 1226 of the Act.” We, therefore, find that no reversible error was made. See Morris v. Norco Const. Co., 632 So.2d 332, 335 n. 2 (La.App. 1 Cir.1993)(wherein that court found that “a determination that the hearing officer incorrectly stated the law d[id] not require a reversal in th[at] case because his judgment denying plaintiffs claim for supplemental earnings benefits is correct and clearly supported by the record.”)
| -Plaintiff also contends that the workers’ compensation judge manifestly erred in several factual determinations, including (1) finding that box tacking was within her physical capabilities; (2) finding that she could perform the job of box tacking even though she was taking prescription narcotics; and (3) finding that she was obligated to investigate the suitability of the offered position.
At trial, the parties stipulated that, after Plaintiffs injury, Defendant offered her a position working as a box tacker. The parties further stipulated that Plaintiff refused the offered position and that Defendant terminated compensation benefits. However, the parties disputed whether Plaintiff was capable of fulfilling the requirements of the offered position.
Essentially, Plaintiff contends that “she was justified in refusing to accept the position of box tacker,” because that position “exceeded [her] physical capabilities.” At trial, she testified that the position, as she remembered it from having previously performed it, was a quota position and required twisting of the torso. In response to evidence adduced at trial regarding alleged modifications in the position by Defendant to accommodate injured employees, Plaintiff asserts, in brief, that “these modifications, if in fact Langston ever intended to make them, were never communicated to [her].” She further testified at trial that the position was stressful and, “due to the fact that [she was] on narcotics and a[sic] antidepressant, [she] knew [she] was not able to perform that job.” Additionally, Plaintiff urges, in brief, that the medications she takes, being “contraindicated for driving a car and for operating machinery,” preclude her from being able to drive to work and operate the box tacking equipment.
| ^Defendant, however, asserts that “[t]he evidence showed that the physical requirements of the [b]ox [t]acker position were within [Plaintiffs] capabilities.” Defendant further submits that the evidence adduced at trial did not establish that Plaintiff was prevented from performing box tacker duties due to her use of prescription narcotics, as the only evidence Plaintiff introduced on that issue were excerpts from the Physician’s Desk Reference “contain[ing] the standard warning applicable to all narcotics.” Further, Defendant states that Plaintiff was offered the opportunity to observe the offered position, but she refused to do so.
Ability to perform job/ Investigation of suitability of position
Much of the evidence presented at trial focused on Plaintiffs ability to engage in the job of box tacking. On March 22 and 23 of 1995, Plaintiff underwent a functional capacity evaluation (FCE) conducted by Ms. Beth Lamkin for purposes of ascertaining the extent of her physical capabilities. The results of the FCE indicated that Plaintiff was “able to perform without difficulty ... sit[ting] frequently, but [was required to] change positions as needed.” Additionally, Plaintiff “demonstrate[d the] ability to sit in a flexed position and to rotate R[ight] and L[eft].” In her recommendations, Ms. Lamkin stated that Plaintiffs FCE classified her as capable of performing sedentary work. On April 25, 1995, Dr. Flood testified by deposition that Plaintiff should be capable of working within her FCE restrictions. Dr. Flood also reviewed the results of Plaintiffs November 29, 1995 FCE and indicated in the February 27, 1996 medical record that he was “going to allow her to return to a sedentary type job or a light duty job within the limitations of her FCE.” How *900 ever, |7when asked whether Plaintiff could perform the job of box tacker, he sent a form letter in response, which letter stated as follows:
The physicians at New Orleans Ortho-paedic Clinic have decided that they will not review specific job requirements. We are not vocational rehabilitation counselors, and we do not feel comfortable in making those decisions.
However, Dr. Clifton Shepherd, an orthopedic surgeon who conducted medical examinations of Plaintiff, testified by deposition that Ms. Denise Perry, a vocational rehabilitation counselor employed by FARA Healthcare Management, had questioned him about Plaintiffs ability to perform the box tacker job. He stated that, in his opinion, Plaintiff could, in fact, perform that job.
At trial, Ms. Perry testified that she had performed a vocational assessment of the box tacker position. She further testified that she had written a letter to Plaintiffs counsel, informing him of the position and inviting Plaintiff to view the position. Quoting from that letter, Ms. Perry stated:
“The position is that of box tacker. It involves using new equipment that Ms. Cole could be used — could—would have to be trained to use, lifting a half-pound box loop, placing the loop on the machine, and pressing a foot pedal for the machine to imprint the “X” onto the loop. The machine can be worked from a seat — worked from a seated position, as well as a standing position.”
Ms. Perry further testified:
I understand the standing position is much more awkward. But I was wanting to know if she could change body positions during the time that she was stationed, and that’s why I asked. And that would allow Ms. Cole to alternate body positions during her work day. And then I asked her to contact me to arrange a meeting with Continental | «Bag to view the sedentary position and possibly schedule her return to work date with Mr. Johnson.[1]
Ms. Perry further testified that her letter essentially stated, “Please contact me. Let us look at the sedentary job. Let us determine whether or not it fits into your physical capabilities.”
However, Plaintiff did not accept Ms. Perry’s offer to view the position. When questioned whether Defendant had [provided] her with information regarding the box tacking position, she responded affirmatively, but further testified that she “was already familiar with it.” She further stated that the position required her to twist her torso the entire day and she concluded that she could not do that without taking her medication.
Use of prescription medication
Regarding her use of prescription narcotics and her ability to operate machinery, Plaintiff was questioned on direct examination about her use of her vehicle. She testified as follows:
I usually drive once a day if I need to go to the store. And by that time, it’s the afternoon, and the medication has worn off.
Additionally, she stated that she does not take her medication when she drives her vehicle. On cross-examination, Plaintiff testified that she takes her medication “twice daily,” which medications include Vicodin and Advil. However, she testified that, when she needs to drive, she does not take her medication. Regarding Plaintiffs [¡¡ability to control her use of the medication, the following colloquy occurred between Plaintiff and defense counsel:
Q: So if you drive between 12:00 and 5:00, noon and 5:00 p.m.—
A: Uh-huh (yes).
Q: that means you don’t take the medication at noon; is that what—
*901 A: Right.
Q: you’re saying?
A: That’s exactly what I’m saying.
Q: On those days then, whenever those — how ever frequently those are, you don’t take any medication until you go to bed at night?
A: Yes.
Q: That’s true?
A: Besides Advil.
Q: So on those days, you could work?
A: I’m not disputing that I can’t work. I’m not saying that I can’t work.
Q: Okay.
A: I’m saying that I can’t work under the medication that I’m on. I cannot operate a machine in a plant.
Q: All right. I understand that, Ms. Cole.
A: Okay.
Q: Okay. And what I’m getting at is that you apparently have the ability to decide when you’re going to take medication and when you’re going to drive your automobile. That is within your control, correct?
A: Correct.
[,nQ: So why is [it] not within your control when you’re going to not take medication and go to work?
A: When I’m in pain, I have to take the medication, and the medication slows me down. I’m not only on Vicodin, I’m on a — I’m on a[sie] antidepressive, also.
Q: I see.
A: So I cannot drive or operate any vehicle.
However, Ms. Perry testified that she did not recall any warning concerning Plaintiffs inability to work due to her use of medications either in the FCE or Dr. Flood’s report. The following exchange occurred between Ms. Perry and defense counsel:
Q: Ms. Perry, do you normally defer to the treating physician with regard to whether or not a person ought to be working, considering the prescription medications they are taking?
A: Always.
Q: It’s not your job or is it to determine whether or not a person ought to be working given the medications if the doctor had said she can be working; that’s correct, is it not?
A: That’s correct.
Q: In this case, Dr. Flood reported to you that she was capable of working within the limitations set forth in the FCE, correct?
A: Correct.
Q: There is nothing.in the FCE, nor in Dr. Flood’s report, which limits her ability to work because she’s taking Lortab, is there?
A: I don’t recall anything saying that she could not work because of her medication regime. I’d have to look. I don’t recall her doctor making any statement like that.
|nIn her oral ruling, the workers’ compensation judge made the following finding of fact:
Denise Perry, the vocational counselor retained by Langston, evaluated the position which was offered to Cole by Langston and found that it was within keeping with the FCE [functional capacity evaluation] and other restrictions placed on Cole by Dr. Flood.
The workers’ compensation judge further stated as follows:
The Court finds [Plaintiffs] testimony regarding the use of narcotic medication as a reason for not being able to perform the duties of her position less than credible. Additionally, Cole’s testimony regarding her inability to perform the duties of box tacker are equally without merit. Cole’s memory of the offered position was different from the actual job. Yet, she failed to take advantage of the opportunity to either observe the position using the new equipment or to try to perform the duties of the job offered.
*902 In order to prove entitlement to supplemental earnings benefits (SEB), a plaintiff must initially demonstrate, by a preponderance of the evidence, his or her inability to earn ninety percent of his or her pre-accident wages. Comeaux v. Sam Broussard Trucking, 94-1631 (La.App. 3 Cir. 5/31/95); 657 So.2d 449, citing La.R.S. 23:1221(3)(a). It then becomes the employer’s burden to establish that the plaintiff is capable of earning more money by demonstrating, by a preponderance of the evidence, the plaintiffs physical ability to perform a job offered to the plaintiff or one available in either the plaintiffs or employer’s community or a reasonable geographic region. Id. citing La.R.S. 23:1221(3)(c)(i).
We evaluate the workers’ compensation judge’s factual determinations under the manifest error standard of review. See Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94); 633 So.2d 129. In conducting that review, we cannot overturn those findings unless the workers’ compensation judge’s determination regarding |12them is manifestly erroneous or clearly wrong. Id.citing Rosell v. ESCO, 549 So.2d 840 (La.1989). See also Granger v. F.F.E. Transp. Service, 98-127 (La.App. 3 Cir. 5/13/98); 713 So.2d 667. Moreover, where the workers’ compensation judge has made plausible credibility determinations, and there is conflicting testimony in the record, we will not supplant those determinations. See Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733.
On review, we find no manifest error in the workers’ compensation judge’s determinations, as we conclude that both the particular factual determinations at issue and the ultimate conclusion that Plaintiff did not satisfy the requisite burden of proof is supported by the record. The evidence presented by Plaintiff does not require a finding that she has established her inability to earn ninety percent of her pre-accident wages under La.R.S. 23:1221(3)(a). In particular, we note that Dr. Flood released Plaintiff to return to a light duty or sedentary position. Also, Dr. Shepherd opined that Plaintiff could perform the box tacker position offered by Defendant, and, further, Denise Perry found the position to be within the parameters of the FCE. Finally, the workers’ compensation judge concluded that Plaintiffs testimony regarding her inability to perform the tasks was less than credible, a determination within the province of the trier of fact. Finding no manifest error, we affirm.
Further, we find no manifest error in the workers’ compensation judge’s decision as it relates to Plaintiffs request for penalties and attorney’s fees. Due to the evidence addressed above regarding Plaintiffs apparent ability to perform the offered box tacking position, we find no evidence requiring penalties pursuant to pursuant to La.R.S. 23:1201.2. Accordingly, this decision, too, is affirmed. 11sLa.R.S. 23:1201(F) or attorney’s fees
DECREE
For the foregoing reasons, the judgment of the workers’ compensation judge is affirmed in all respects. All costs associated with this appeal are assessed to Plaintiff.
AFFIRMED.

. Glenn Johnson is the plant manager for Langston Companies, Inc., in Crowley, Louisiana.