633 So.2d 129 (1994)
Edward SMITH
v.
LOUISIANA DEPARTMENT OF CORRECTIONS.
No. 93-C-1305.
Supreme Court of Louisiana.
February 28, 1994.
*130 Arthur Cobb, Jr., Cobb & Cobb, Baton Rouge, for applicant.
Robert J. Collins, Baton Rouge, for respondent.
HALL, Justice.[*]
In this worker's compensation case, the issue is whether plaintiff has proven that his disability prevents him from earning 90% of his pre-injury wages so as to entitle him to supplemental earnings benefits under LSA-R.S. 23:1221(3). The administrative hearing officer held plaintiff had not made such a showing, instead finding that "claimant is restricted more by his trepidation than by his disability." The court of appeal summarily affirmed. We granted plaintiff's writ application and remanded the case to the court of appeal for a full opinion. On remand, the court of appeal found no manifest error in the hearing officer's finding that plaintiff had not sustained his burden of proof. We granted plaintiff's writ application a second time and now reverse.

I.
Plaintiff was employed as a correctional officer for the Louisiana Department of Corrections at the Louisiana Training Institute (LTI). On January 11, 1988, while in the course and scope of his employment, plaintiff was struck by an inmate in the left eye. As a result of the blow, plaintiff lost 95% of his vision in that eye. The defendant paid compensation benefits for 95 weeks according to the schedule payments provided by LSA-R.S. 23:1221(4)(o)[1].
Plaintiff returned to work approximately three months after the accident, with his *131 doctor's warning "that he avoid any physical confrontation that may involve trauma to his eye." Any further trauma to the eye, the doctor cautioned, could result in total blindness in the left eye. When he returned to LTI, plaintiff was placed in the position of a perimeter security guard. This position was in a guard tower outside the fences of the institution, as far away from the prison population as possible. The job required that plaintiff watch the grounds and radio for help if an inmate approached the fence. Likewise, he was also required to help capture any prisoner that attempted to escape. Plaintiff remained in this position for approximately two years. At that time, it was discovered by Zbigniew S. Cypel, Human Resources Administrator, that there was an "erroneous conclusion ... [made] that Mr. Smith would be able to hold a security position at one of our units without having physical contact with student offenders." In a letter to Whit King of the Office of Risk Management, Cypel noted that there was no way the facility could comply with Mr. Smith's restriction to avoid confrontation since correctional officers are required to be able to work at any post and conduct any assignment needed to maintain the safety of the facility. As of February 16, 1990, plaintiff was placed on sick leave and on June 25, 1990, he was terminated after exhausting that sick leave.
Plaintiff collected unemployment benefits from the date of his termination until December, 1990. A rehabilitation officer with the Office of Risk Management, Jeanette Felps, worked with plaintiff in an attempt to find him employment. Plaintiff was given various job possibilities by the officer and plaintiff testified that "the ones that I thought I could most likely handle, I applied for them. But the ones that would cause a risk, I didn't apply for them...." Plaintiff inquired into these positions with no success. Bertha Held, the vocational rehabilitation expert that worked with the plaintiff, testified that concentration was placed on state employment as plaintiff was entitled to non-competitive reemployment rights. This meant that for five years after his termination he was given preferential treatment for state jobs and did not have to compete with other applicants if he met the qualifications. This also entitled him to begin employment at the salary he was making in his old job if the state agency agreed and that amount was not above the maximum pay for the new employment. Plaintiff claims that he never was informed of his non-competitive status. Ms. Held found two job opportunities with state agencies that were hiring. The first was a dormitory counselor assistant at the Louisiana School for the Deaf, which plaintiff did not inquire about, and the second was for an unarmed facilities and grounds guard at Southern University, which plaintiff was told by a university employee not to apply for because of his restriction.
Plaintiff also testified that during this time he called several grocery stores and retail establishments seeking employment, but none were hiring. He did not put in applications with any of these businesses. However, plaintiff did assist his wife in the operation of a business out of his home, including the task of driving her to pick up merchandise.
Doctor Breaud, plaintiff's treating physician, testified by deposition as to plaintiff's ability to work and specifically his ability to work as a guard. He stated:
Let me answer that this way, I don't know what a guard has to do, other than what you and I assume a guard has to do, but on the other hand, I have a lot of patients that I've treated and followed and know of their uniocular status, and their occupations, and there is virtually no occupationwell, I wouldn't say none, but there are very few occupations that one cannot pursue with one eye, okay?
The doctor further testified that he told plaintiff not to get hit in the eye because, due to the weak tissue from the trauma, any further blow could cause complete blindness in the left eye.
Plaintiff filed suit seeking supplemental earnings benefits under LSA-R.S. 23:1221(3). The hearing officer denied plaintiff's claim and the court of appeal affirmed. After our remand for a full opinion, the court of appeal once again affirmed finding no manifest error. Smith v. Louisiana Dept. of Corrections, *132 618 So.2d 1065 (La.App. 1st Cir.1993). The court reasoned that there were two jobs found for plaintiff that he did not apply for. The court noted with regard to plaintiff's fear:
While we sympathize with the plaintiff's fears, we believe that Dr. Breaud's testimony clearly indicates that the degree of fear which the plaintiff was displaying was medically unfounded.
We granted plaintiff's writ application, 620 So.2d 855 (La.1993).

II.
In a worker's compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Freeman v. Poulan/Weed Eater, 93-1530, p. 4, 630 So.2d 733 (La.1994); Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). Therefore, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Freeman, supra; Rosell, supra; Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Stobart, supra.
Entitlement to supplemental earnings benefits is governed by LSA-R.S. 23:1221(3)[2]. In order to recover, the employee must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. LSA-R.S. 23:1221(3)(a); Peveto v. WHC Contractors, et al, 93-1402, p. 5-6, 630 So.2d 689 (La.1994); Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. Daigle, supra, 545 So.2d at 1007. "In determining if an injured employee has made out a prima facie case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." Daigle, supra, 545 So.2d at 1007, quoting Gaspard v. St. Paul Fire & Marine Insurance Co., 483 So.2d 1037, 1039 (La.App.3d Cir.1985). See, Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52 (La.1993). Once the employee's burden is met, the burden of proof then *133 shifts to the employer, who, if he wishes to contend that the employee is earning less than he is able to earn so as to defeat or reduce supplemental earnings benefits, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Freeman, supra, at p. 7; Daigle, supra, 545 So.2d at 1008-9; Allen v. City of Shreveport, 618 So.2d 386, 389 (La. 1993).

III.
It was stipulated by the parties that plaintiff's average monthly wage was $1334.72[3]. Therefore, in order to be entitled to supplemental earnings benefits, plaintiff had to prove by a preponderance of the evidence that he was unable to earn $1,201.25 a month, 90% of his average monthly pre-injury wage.
Plaintiff contends that he is unable to earn 90% of his pre-injury wages because he is limited due to the risk that further trauma could lead to complete blindness in his left eye. He argues that the jobs defendant found for him were unacceptable, as they were jobs that included risks of further blows to the eye. The state argues, and the hearing officer and the court of appeal found, that plaintiff's fears were unreasonable.
Doctor Breaud stated in his letter to defendant that "it would be dangerous for him [plaintiff] to have any blunt trauma to the eye at this point as his vision may be compromised further." While not in the form of a restriction per se, the doctor warned, "I have suggested that he avoid any physical confrontation that may involve trauma to his eye." In his deposition testimony, Dr. Breaud noted that while plaintiff was legally blind, he had some useful vision. He can see motion out of the eye and has some peripheral vision, although all vision out of that eye is blurred. While the doctor did not forbid plaintiff from accepting employment where there was a risk of confrontation, we cannot fault plaintiff for refusing to do so. There is a substantial risk that any further trauma could cause permanent, total blindness in one eye. Plaintiff does not have to accept employment that involves an appreciable and significant risk to his well-being. The hearing officers and the courts should consider all factors that affect a plaintiff's ability to obtain employment when determining whether he is eligible for supplemental earnings benefits. One factor that must be considered in this case when determining whether plaintiff can earn 90% of his pre-injury wages is his inability to perform a job because there is an undue risk to plaintiff's health. As noted above, plaintiff is not required to accept a job that includes situations that have been restricted by his treating physician.
The hearing officer and the court of appeal found that plaintiff had not made out a prima facie case establishing his entitlement to supplemental earnings benefits, as he had not shown by a preponderance of the evidence that he was unable to earn 90% of his pre-injury wages. However, plaintiff was removed from his position as a correctional officer because defendant could not guarantee against the risk of confrontation. Plaintiff was expected to perform all the duties of a correctional officer and that included confronting, controlling and apprehending prisoners. Additionally, plaintiff attempted to obtain employment as a welder, as he had six years of experience in that occupation. He testified that he applied at the Department of Transportation and they would not hire him because of the eye injury. He also spoke with Port Allen Marine about a welding job, but they likewise concluded that there was too much of a risk to offer him employment. Plaintiff likewise applied at seven state agencies that Felps had recommended to no avail[4]. He also, on his own, as a requirement *134 to receiving unemployment, contacted several retail and department stores regarding employment, without success. We, therefore, find that plaintiff made out a prima facie case of inability to find employment paying 90% of his pre-injury wages and entitlement to supplemental earnings benefits. The hearing officer and the court of appeal were manifestly erroneous in finding otherwise. The burden then shifted to the defendant to prove that plaintiff could physically perform a specific job that was available in his geographic location. LSA-R.S. 23:1221(3)(c)(i).
Bertha Held, the vocational expert, compiled a list of ten jobs that she believed plaintiff could perform. Out of these ten possibilities only two had definite openings. The two positions that were available, dormitory counselor assistant at the Louisiana School for the Deaf and a facilities and grounds guard at Southern University, we find, were not suitable for plaintiff given his restriction and experience.
Initially, we note it was not clearly established that the job at the Louisiana School for the Deaf would have paid plaintiff 90% of his pre-injury wages. Further, it was not established that plaintiff had the training and experience to handle the job. Held testified that the job mainly consisted of helping the children with their homework. The position required that plaintiff learn sign language, which the school would teach, and a high school diploma, which plaintiff had. However, the job was temporary until May, 1991, with only a possibility that it could become permanent. It was not shown that plaintiff was capable of learning sign language, particularly during the limited time period of availability of the job, or that his experience as a security guard and welder qualified him for the position. Thus, the suitability of this position was not proven. Plaintiff expressed concern about the risk of further injury from dealing with "rowdy" children. His concern in this regard may not have been justified but the requirement that he possess a skill that he did not have suggests that this position did not constitute available, suitable employment.
While the Southern University job could pay plaintiff 90% of his pre-injury wages if he was paid his prior salary, as the maximum salary for this position was $1227 a month, it without question involved a risk of confrontation. The vocational rehabilitation expert testified that the duties of the guard would include conducting traffic on campus, helping with crowds and patrolling the grounds. The position would also require plaintiff to confront any person that did not belong in one of the buildings or on campus. The job likewise included the responsibility of crowd control, where there is the attendant possibility of accidently sustaining a blow to the eye. Plaintiff testified he called inquiring about the job, but was told that there was a risk of confrontation and that he should not apply if he could not do the "full job." This testimony was uncontradicted. This position is also very similar to the job at LTI which he was found incapable of doing because of the risk of confrontation.

IV.
We hold that the plaintiff has proven his entitlement to supplemental earnings benefits as he has proven by a preponderance of the evidence that his disability prevents him from earning 90% of his pre-injury wages. Defendant has not shown that plaintiff is capable of performing any specific job in the geographic location. However, it is apparent that plaintiff is capable of performing some gainful employment and has an earning capacity. Supplemental earnings benefits, according to LSA-R.S. 23:1221(3)(a), equal sixty-six and two-thirds of the difference between plaintiff's average monthly wage and plaintiff's earning capacity. In order to determine the correct amount of supplemental earnings benefits to which plaintiff is entitled, we remand the case to the hearing officer for a determination of plaintiff's earning capacity and a calculation of the amount of benefits due.

V.
The judgment of the hearing officer, as affirmed by the court of appeal, is reversed. *135 We hold that plaintiff is entitled to supplemental earnings benefits beginning June 25, 1990, with defendant given credit for the weeks plaintiff received unemployment compensation benefits[5]. The case is remanded to the hearing officer for a determination of plaintiff's earning capacity and calculation of the proper amount of plaintiff's benefits. All cost are assessed to the defendant.
REVERSED AND REMANDED.
LEMMON, J., concurs and assigns reasons.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice (dissenting).
In concluding that Edward Smith is entitled to supplemental earnings benefits beginning June 25, 1990, the majority focused on the plaintiff's inability to earn wages equal to ninety per cent or more of the wages he earned before the accident. However, they failed to consider whether this inability was the result of the injury, the loss of vision, which Edward Smith sustained in the course of his employment.
This Court has held that the threshold prerequisite of the supplemental earnings benefits provision is that the employee's injury result in his inability to earn wages equal to ninety per cent or more of the wages he was earning at the time of the injury. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989). Accordingly, the injured employee bears the burden of proving by a preponderance of the evidence that the injury resulted in an inability to earn that amount.
In this case, Smith sustained a blow to his left eye which resulted in permanent damage. Although the treating physician testified in deposition that the employee retained some useful vision, including motion and peripheral vision, he fixed the percentage of useful vision at less than ten per cent.
As a result of the loss of vision, Smith received compensation for permanent partial disability, the so-called "schedule benefits," for ninety-five weeks, which totalled approximately $19,000. This payment was in addition to compensation while out of work immediately following the injury and all medical expenses.
The majority stated that, at his discharge from treatment, the employee was not medically forbidden from accepting any employment, even employment which included the risk of confrontation. Quoting from the physician's deposition testimony, the majority opinion also acknowledged that "there are very few occupations that one cannot pursue with one eye." As noted by the hearing officer, then, Smith's claimed disability now results not so much from the loss of vision as from the fear of further injury to his eyesight.
It is the uniform rule that when a claimant's disability is increased or prolonged after a physical accident or trauma by traumatic neurosis, conversion hysteria, or hysterical paralysis, full disability, including the effects of the neurosis, is compensable. In Westley v. Land & Offshore, 523 So.2d 812, 813 (La. 1988), this Court noted that, "in view of the nebulous characteristics of mental conditions and the possibility of symptoms being easily feigned," a claimed disability caused by any mental condition must be analyzed with the utmost caution.
To facilitate that analysis, the Louisiana Legislature enacted La.Rev.Stat.Ann. § 23:1021(7)(c) and (d) some sixteen months before the trial in this matter. Accordingly, an employee must prove by clear and convincing evidence that he suffered a physical-mental injury before it need be determined whether the injury resulted in his inability to earn wages equal to ninety per cent or more of the wages he was earning at the time of the injury. Moreover, to be compensable, the mental injury must be diagnosed as a threshold requirement by a licensed psychiatrist or psychologist and the diagnosis must *136 meet the criteria established in the most current issue of the Diagnostic and Statistical Manual of Mental Disorders presented by the American Psychiatric Association.
This employee offered into evidence no psychiatric opinion concerning his alleged disability. There was not even lay testimony by the claimant's family or friends concerning the effects of the alleged disability. Smith's own testimony falls far short of establishing a psychotic, emotional or neurotic illness, injury or condition. Since the employee did not demonstrate by clear and convincing evidence that he suffered a mental injury induced by physical trauma, an injury that resulted in his inability to earn at least ninety per cent of the wages he was earning at the time of the injury, he has not met the threshold prerequisite of the supplemental earnings benefits provision. The judgment of the court of appeal should be affirmed.
NOTES
[*] Kimball, J., not on panel. Rule IV, Part 2, § 3.
[1] LSA-R.S. 23:1221(4)(o) provides:

In all cases involving a permanent partial anatomical loss of use or amputation of the members mentioned hereinabove, compensation shall bear such proportion to the number of weeks provided for herein for the total loss of such members as the percentage loss or impairment to such members bears to the total loss of the member, provided that in no case shall compensation for an injury to a member exceed the compensation payable for the loss of such member.
The provision concerning an eye is LSA-R.S. 23:1221(4)(i) which states:
For the loss of an eye, sixty-six and two-thirds percent of wages during one hundred weeks.
[2] LSA-R.S. 23:1221(3) provides in pertinent part:

(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
* * * * * *
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region. (ii) For purposes of Subparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
[3] It was stipulated that plaintiff's average weekly wage was $310.40. Under the worker's compensation statutes, LSA-R.S. 23:1221(3)(a), the average weekly wage is multiplied by 4.3 to arrive at the average monthly wage, $310.40 × 4.3 = $1,334.72.
[4] Jobs on that list which he inquired about were with the Department of Transportation, the Louisiana School for the Visually Impaired, the East Baton Rouge Housing Authority, the State Police, Department of Wildlife and Fisheries, Governor's Office of State Buildings and Earl K. Long Hospital.
[5] LSA-R.S. 23:1225(B) provides:

No compensation benefits shall be payable for temporary or permanent total disability or supplemental earnings benefits under this Chapter for any week in which the employee has received or is receiving unemployment compensation benefits