746 So.2d 163 (1999)
Kevin McKENZIE
v.
EVANS QUALITY TEMPORARIES.
No. 99-CA-518.
Court of Appeal of Louisiana, Fifth Circuit.
October 26, 1999.
*164 Kenny Charbonnet, New Orleans, Louisiana, Attorney for Defendant-Appellant, Evans Quality Temporaries.
David K. Buie, Metairie, Louisiana, Attorney for Plaintiff-Appellee, Kevin McKenzie.
Court composed of Judges H. CHARLES GAUDIN, CHARLES GRISBAUM, Jr. and SUSAN M. CHEHARDY.
CHEHARDY, Judge.
This is a worker's compensation case. The defendant employer appeals a judgment holding it liable to the plaintiff for supplemental earnings benefits, ordering payment of all medical bills and medication expenses, finding it was arbitrary and capricious in refusing to pay benefits, and awarding plaintiff penalties and attorney's fees. We affirm in part and reverse in part.
*165 Kevin McKenzie was working for Evans Quality Temporaries when he was injured on February 20, 1998. An empty 55-gallon metal drum fell from above and landed on him. McKenzie filed a worker's compensation claim on July 9, 1998, alleging that as a result of the accident he sustained "immediate onset of severe back pain," remained under medical treatment, and had been paid no wage benefits.
Evans Quality Temporaries answered, denying that plaintiff sustained an injury or occupational disease and that he was disabled or had lost earning capacity. Defendant asserted that plaintiff had refused physical therapy and refused to perform light duty work that was offered. In addition, defendant raised the defenses of intoxication and willful intent to injure himself or others. Defendant also stated that plaintiff had been discharged June 5, 1998.
At trial on January 25, 1999, the only witnesses were the plaintiff and Judith Evans, president of Evans Quality Temporaries. The only medical evidence admitted was in the form of medical records and form reports.
The plaintiff testified he began work for Evans Quality Temporaries on February 16, 1998 (four days before the accident). On February 20, 1998, while he was working alongside a conveyor belt, an empty 55-gallon metal drum fell onto his back and shoulder. He drove himself to Belle Chasse Medical Services, where he was treated by Dr. Charles Anastasio. Dr. Anastasio gave him some pills, which he took. A clinic employee told him he should not have taken the pills immediately because he still had to undergo a drug test. Plaintiff testified that Dr. Anastasio told him to rest for a couple of weeks.
The drug screen performed on the day of the accident was positive for morphine, but the finding was negated by the fact that plaintiff had taken prescription medication. The drug screen report indicates the overall result as negative because the plaintiff had a prescription for codeine.
According to plaintiff, Dr. Anastasio told him to stay in bed for a couple of weeks. The form report completed by Dr. Anastasio, however, shows he approved plaintiff to return to work at light duty.
Plaintiff underwent various diagnostic procedures that were negative for bone injury or spinal damage. Plaintiff saw Dr. Anastasio on follow-up visits on February 27 and March 13. In each report the doctor cleared plaintiff to return to work at light duty. Plaintiff testified he continued to complain to the doctor of pain, but admitted he had not done the exercises prescribed by the doctor. On the report forms for each of the follow-up visits the doctor also wrote "light duty."
Plaintiff admitted that Evans Quality Temporaries kept calling and saying they had light duty for him to do. He did not feel he was ready to go back because he was still hurting. He did take up the offer to work in the office and "gave it a try," but he found it stressful. He admitted he delayed returning to work because he "wanted ... to make sure that everything was going to be all right." He felt he "should be ... getting something" for the weeks he was out, but he eventually went back to work for the company because he had no income. He admitted he did not accept the company's offer of light duty until May 25th and that he worked only two weeks.
Plaintiff described the work he was given as answering the telephone, filing, and making phone calls to other temporary employees. He said he "can't take it," however, because "you just call the same old numbers ..., you hear vulgar language."
Plaintiff stated he was asked to undergo another drug screen, which he refused. He worked until June 5, 1998, when he left his employment with Evans Quality Temporaries. The record is unclear as to the reason for why he stopped working for the company. Plaintiff stated he was terminated; he believed it was because he kept *166 asking whether they were going to compensate him for the time he had been out of work. Plaintiff stated that he "had a few words" with Judith Evans and he was terminated.
Plaintiff denied that he had been offered any vocational rehabilitation services and stated he had therapy only once. No one assisted him in finding employment with any employer other than the defendant. After leaving Evans Quality Temporaries, he worked with a lawn service for three days. Since then he had earned money by cutting hair, but had not worked for other employers. He claimed to be actively looking for a job. He denied taking any drugs in the week prior to or on the day of the accident other than the prescribed medications.
Plaintiff admitted on cross examination that Dr. Pierre Espenan (whom he saw on May 29, 1998 and June 5, 1998) told him there was no reason for him to continue taking medication. Plaintiff stated he refused later that day to undergo another drug screen because "they screwed up the first time and they might do it again the second time."
Plaintiff also admitted he no longer resided at the address he had listed when he completed his employment application with Evans Quality Temporaries. He stated he still received mail there as well as at two other addresses, including his grandparents' address. He said he uses his grandparents' address as a mailing address because they keep his mail for him. He denied, however, receiving a letter sent from Evans in June 1998. That letter informed him that he was still in good standing with the company, that he had been released for full duty, and requested he call to set up his drug test. The letter placed in evidence shows it was mailed by certified mail to the General Taylor address on June 15, 1998, but was returned marked "unclaimed."
Plaintiff stated the light duty job he was given (sitting in a chair, answering the telephone, carrying files back and forth) was "miserable." He was "very uncomfortable" with it because "that's not [his] line of work." He admitted he did not disagree with the statements made in the medical reports. He also admitted he had refused to sign Dr. Espenan's report on June 5th because he disagreed with the doctor's finding that he was able to return to full duty. He also disagreed with the finding of Dr. Claude Williams on September 25, 1998 that he was able to return to a regular job. He said, "I still get little slight pinches of pain."
Judith Evans testified her company has many types of light duty work constantly available. Upon receiving the report dated 2/20/98, which designated plaintiff as able to work at light duty, she told the dispatchers to contact plaintiff and offer him light-duty work. She stated they called "many, many times," but that plaintiff was "unavailable." She said plaintiff did not answer the phone or return phone calls. She admitted, however, that she herself had not made the calls.
Eventually Evans resorted to letters. The first letter went to the address listed on plaintiff's employment application. However, she said, the company was told everything should be sent to the General Taylor address, which is the address they used thereafter. They sent the letters by both certified and direct mail at the same time. The certified mail was returned, but the regular letters were not.
The light duty offered to plaintiff was office work which fit within the restrictions noted by Dr. Anastasio. It required sitting for long periods, which he could do, and carrying no more than 10 pounds. The company never received any doctor certificate stating that plaintiff could not work.
Evans was advised that Dr. Espenan had discharged plaintiff to return to full duty on June 5, 1998. The dispatchers could not contact plaintiff, so she sent him the June 15th letter mentioned above. She recalled speaking to plaintiff and telling *167 him he needed to take another drug test. She would be willing to offer him employment if he would take the drug screen, but he never returned.
Evans was unable to state when the company first communicated with plaintiff to advise him that light duty work was available, because she did not make the calls. She said the dispatchers continued intermittently to attempt to contact plaintiff over the two-and-a-half month period after the accident. She stated they would have attempted to contact him daily during the first week and into the second week. After that she could not be specific. Finally, they sent him a letter on April 9th stating they had been unable to contact him and offering him light-duty work. That letter was sent both by certified and regular mail and neither copy was returned.
Evans verified that plaintiff worked at light duty for two weeks, from May 18, 1998 to May 29, 1998. The amount of plaintiff's earnings for the week he worked prior to being injured was stipulated.
The worker's compensation judge ("WCJ") made the following fact findings:
1). Claimant was injured by accident during the course and scope of his employment on February 20, 1998.
2). There was no valid drug screen performed to establish any intoxication defense; and there was no evidence to establish that the second drug screen was either random, or for cause, or that it was in accordance with the employer's written drug policy.
3). Claimant's medical records established that he could return to light duty work with restrictions since February 20, 1998, as stated by Dr. Anastasio.
4). Claimant was released to return to light duty work with restrictions by Dr. Espenan on May 29, 1999[sic], and without restrictions by Dr. Espenan on June 5, 1998.
5). Claimant was released to return to regular duty work by Dr. Claude Williams on September 25, 1998.
6). Defendants did not pay any temporary total disability benefits or supplemental earnings benefits....
7). Defendants did not offer any vocational rehabilitation services, or conduct a labor market survey.
8). On April 9, 1998, defendants sent a letter to claimant informing him that a light duty job was available on April 15, 1998.
9). Claimant returned to light duty work on May 25, through June 5, 1998. He was terminated on June 5, 1998.
10). Defendants did not establish that claimant was capable of earning at least ninety per cent of his pre-injury wages.
11). Testimony and evidence did not establish a suitable job availability within claimant's physical capabilities, within a reasonable geographic region as required by the statute.
12). Claimant did not receive actual notification of a light duty job with his employer until the letter dated April 9, 1998; advising him to report to work on April 15, 1998. This was the only job identified.
13). The claimant was placed under job restrictions on February 20, 1998.
14). Claimant is entitled to supplemental earnings benefits as specified in the judgment.
15). Claimant is entitled to the payment of medical expenses and medication expenses.
16). Defendants have been arbitrary and capricious.
The WCJ awarded plaintiff supplemental earnings benefits in the amount of $144.00 per week from February 20, 1998 through May 24, 1998 and from June 6, 1998 through September 25, 1998, ordered *168 defendant to pay plaintiff's medical bills and medication expenses arising out of the accident, and assessed penalties of $2,000.00 and attorney's fees of $2,000.00 against defendant.
Defendant appeals, asserting the WJC erred as follows: in awarding penalties and attorney's fees; in finding that Dr. Espenan released plaintiff to return to light duty work without restrictions on June 5, 1998; in finding that defendant did not establish that plaintiff was capable of earning at least 90% of his pre-injury wages; in finding that the testimony and evidence did not establish a suitable job availability as required by statute; in finding that claimant did not receive actual notification of light duty work from his employer until the April 9, 1998 letter; in finding plaintiff entitled to supplemental earnings benefits; and in finding defendants arbitrary and capricious and assessing penalties and attorney's fees against defendant.
R.S. 23:1221 sets out the schedules of compensation for the various categories of injuries within the statute. Plaintiff clearly does not fit within either the permanent total or temporary total disability categories. See La. R.S. 23:1221(1)-(2). The statute provides for supplemental earnings benefits in La. R.S. 23:1221(3) as follows:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
La. R.S. 23:1221(3).
La. R.S. 23:1221(3) places the initial burden to prove disability on the claimant. In order to recover, the employee *169 must first prove by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/38/94), 633 So.2d 129, 132. The analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that worker's compensation law is to be liberally construed in favor of coverage. Id.
In a worker's compensation case, as in other cases, the appellate court's review is governed by the manifest error or clearly wrong standard. Smith, supra. Therefore, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Id. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact-finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Id.
We find, however, that the manifest error standard is not applicable in this case. Rather, we are required to review the record and evidence de novo because the WCJ made an error of law in the beginning of her analysis. Specifically, the judge placed the initial burden on the defendant employer to prove the employee was unable to earn 90% of his pre-injury wages. (See finding of fact No. 10.) As mentioned above, however, it is the employee's initial burden to prove disability.
Where one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Evans v. Lungrin, 94-0541 (La.2/6/98) 708 So.2d 731, 735.
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial.... Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights.... When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. [Citations omitted.]
Id. Accordingly, we are required to conduct a de novo review of the record.
Reviewing the facts related above and allocating the initial burden of proof to the plaintiff, we conclude the plaintiff failed to establish by a preponderance of the evidence that he is unable to earn wages equal to ninety percent or more of the wages he earned before the accident.
First, after each of four examinations between February 20 and May 29, 1998 plaintiff was cleared to work at light duty. On June 5, 1998 he was cleared to return to full duty and was discharged from care by Dr. Espenan. Nevertheless, plaintiff made no attempt to return to work until late May. He avoided and/or ignored telephone and written requests from his employer offering him a light duty position. Although he did eventually work the light duty position for two weeks, his complaints about it were not related to physical inability to perform the tasks, but rather to his dislike of the type of duties involved.
Further, the employer proved the position offered would have provided plaintiff with more than 90% of his pre-injury wages, because the hourly rate for the light-duty office job was the same or almost the same as the hourly rate for the warehouse job he had at the time he was injured.
Accordingly, we find the plaintiff failed to show that he was incapable of earning 90% of his pre-injury wages. He is not, therefore, entitled to supplemental earnings benefits. See Araujo v. Marriott Corporation, 98-1129 (La.App. 5 Cir. 3/30/99) *170 731 So.2d 432; Vicknair v. Nature Conservancy, 97-2229 (La.App. 1 Cir. 6/29/98) 718 So.2d 476.
If the employee meets his burden of proof, the burden shifts to the employer who, in order to defeat the employee's claim for supplemental earnings benefits or establish the employee's earning capacity, must prove by a preponderance of the evidence that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. Seal v. Gaylord Container Corp., 97-0688 (La.12/2/97) 704 So.2d 1161, 1166. Actual job placement is not required. Id.
Even if we were to find that plaintiff had established inability to earn 90% of his pre-injury wages, we would also have to find that the defendant proved that plaintiff was offered a light-duty job he was physically able to perform, which was available to him, and certainly was within his geographic region-specifically, the office job at Evans Quality Temporaries.
Thus, the defendant suitably rebutted any showing the plaintiff might have made of entitlement to supplemental earnings benefits.
The remaining issue is the award of penalties and attorney's fees for arbitrary and capricious refusal to pay benefits. La. R.S. 23:1201(F) provides for assessment of a penalty and attorney fees where the employer or insurer has refused or failed to pay benefits due. However, the penalty and attorney fees do not apply if the claim is reasonably controverted.
Thus, to determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La. R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. This definition is in accord with that presently used by the lower courts to determine whether penalties and attorney fees are owed.
Brown v. Texas-La Cartage, Inc., 98-1063 (La.12/1/98) 721 So.2d 885, 890.
Reviewing the evidence in the case, it is clear that the claim was reasonably controverted based on the information available to the employer. Accordingly, plaintiff is not entitled to penalties and attorney's fees for the refusal to pay him compensation.
Plaintiff asserts in his appellate brief that the awards of supplemental earnings benefits for two different periods each had a different basis. He contends the first period, from February 20 to May 25, 1998, was based on his limited work capability during that time due to his injury. He contends the second award, from June 5 to September 25, 1998, is premised on a determination that the claimant's disability extended beyond the date Dr. Espenan returned plaintiff to unrestricted work. Plaintiff relies on the manifest error rule to uphold the WCJ's apparent credibility determination that his plea of being unable to return to full duty prevailed over the physician's finding that he was able to return to full duty.
Because we are reviewing this record de novo, however, we are not bound by the manifest error rule. Our own determination is that the plaintiff's claim to be unable to return to work is not credible and not supported by the evidence. Accordingly, the award of supplemental earnings benefits from June 5 through September 25, 1998 is also reversed.
The judgment also held that the claimant is entitled to the payment of all medical bills and medication expenses arising from the accident of February 20, 1998. *171 That portion of the judgment requires no change and is affirmed.
For the foregoing reasons, the judgment of the Office of Worker's Compensation is affirmed insofar as it ordered payment of all medical bills and medication expenses arising from the accident of February 20, 1998. In all other respects the judgment is reversed. The parties are assessed their own costs for the appeal.
AFFIRMED IN PART AND REVERSED IN PART.