|;>SOL GOTHARD, Judge.
Claimant, Gordon Perkins, appeals from a judgment dismissing his disputed workers’ compensation claim against defendant, The Radiator Shop, Inc and its insurer, Reciprocal Exchange Casualty. For the following reasons, we affirm the decision of the workers’ compensation judge.
Gordon Perkins was a mechanic for The Radiator Shop, Inc. On October 14, 1997, Perkins hurt his hand in the presence of his supervisor, Glen Pellisier, when he was struck in the right hand by a belt tension-er while working on a vehicle. Perkins first saw a doctor three weeks after the injury. .
Perkins continued to work at his job as a mechanic until December 18, 1997. On December 24, 1997, he underwent surgery to his hand. Dr. Charles Dupin released Perkins to light duty status as of January 28, 1998; however, Perkins worked only one day because there was no light duty work available. On April 1, 1998, Dr. Du-pin released Perkins to return to work without any reservations or restrictions. Perkins returned to The Radiator Shop, Inc., where he continued to work as a mechanic. In May of 1999, Perkins quit *566 his job, after obtaining employment at Lesson Chevrolet.
|aOn March 16, 1998, Perkins filed his disputed claim for compensation benefits which was the basis for the instant action.
At trial, Mr. Perkins testified that on the date of the accident, he and Mr. Pellisier were changing a fan belt when the tool came up and hit him in the palm of the hand. He washed his hand and discovered that there were no cuts. His hand was stinging “pretty bad.” The next day, he noticed that a bruise was starting, which was oblong shaped and located on his palm. The tips of his fingers were tingling as if they had fallen asleep. About three days later, his fingernails started to discol- or. The hand was painful, but he continued to work.
Three weeks after the accident his hand still hurt, so he went to Dr. Jesus Fonseca, through his wife’s HMO plan. Dr. Fonse-ca referred him to a vascular surgeon, Dr. McHale, who first ordered a blood flow test, and then an arterial angiogram. The angiogram showed a medial ulnar thrombosis, and surgery was performed by Dr. Charles Dupin on December 24,1997.
At trial, Perkins testified that he told Dr. McHale that he had hurt his hand, and he did not know why the interview notes stated “no trauma.” He further testified that there was no reference to a bruise in Dr. McHale’s notes, because the bruise in his palm had gone away by the time he saw the doctor, although the fingers were starting to turn blue. He stated that his wife’s testimony that his hand was deep purple at that time was incorrect. Dr. McHale was deceased at the time of the trial.
RDiana Perkins, claimant’s wife, testified that at the time of the accident she was sole transportation for her husband going to and from work. When she picked him up on the date of the accident, he told her that he and Glen had been working on a vehicle, and in the process of doing so his hand was struck with a tool. She looked at his palm area, and saw that it was starting to bruise. The next day, the bruise got darker and spread up toward the lower joints of the ring and pinkie fingers.
Mrs. Perkins stated that claimant continued to work, although his hand was discolored and very cold, and he complained of severe pain. He went to the doctor on November 6, because he could not stand the pain any more.
Mrs. Perkins testified at trial that she asked Pellisier to pay for the medical bills, but he refused.
Glen Pellisier testified that on that date of the accident, they were placing a belt on a pulley, when the tool slipped off the pulley and struck Mr. Perkins on the top of his knuckle by his little finger. After Perkins washed his hand, Pellisier saw a red mark, but no bruising. After the accident, Perkins continued to work, complaining of pain, but not on a daily basis. Pelli-sier stated that Perkins did not ask for, nor did he offer to pay, workers’ compensation when Perkins was diagnosed with his hand condition. He first discovered that Perkins was requesting workers’ compensation when contacted by Perkins’ attorney. He left the decision up to his workers’ compensation carrier, who denied the claim on the basis that it was a non-work related injury.
| ¡¡The deposition of Dr. Dupin was introduced into evidence at trial. He noted that the results of the angiogram showed that there was no circulation through the ulnar artery because of a thrombosis (clot). He performed surgery to remove the clotted section of the artery and he replaced it with a vein graft. He stated that it was unlikely that this condition would have re- *567 suited if Perkins had struck his knuckle, although it was possible if it were a palm hit.
Dr. Stokes conducted an independent medical examination of Perkins on July 27, 1999. He concluded that the ulnar artery thrombosis was not related to the work accident, because of the three week delay between the accident and the treatment. It stated that it would not take three weeks for a clot to form, and that the patient’s finger would get numb and blue almost immediately.
This court, in Gray v. Prince Dump Truck Serv., 00-1925 (La.App. 5 Cir. 04/24/01), 785 So.2d 1018, 1020-21, stated our standard of review in a workers’ compensation case as follows:
It is well settled that factual findings in workers’ compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Smith v. Louisiana Dept. of Corrections, 98-1305 (La.2/28/94), 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Banks, 696 So.2d 551; Freeman, 630 So.2d 733; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Mart v. Hill, 505 So.2d 1120 (La.1987). Where there are two permissible views of the evidence, a factfinder’s choice between them can never be manifestly erroneous or clearly wrong. Banks, 696 So.2d 551; Stobart, 617 So.2d 880. lfiThus, “if the [factfin-der’s] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Banks, 696 So.2d 551; Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106 (La.1990).
Additionally, “when findings are based on determinations regarding the credibility of witnesses, the manifest error— clearly wrong standard demands great deference to the trier of fact’s findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted).
The trial court, in dismissing Mr. Perkins’ claim, stated that “The Court listened attentively to the testimony of the witnesses and observed their demeanor. It has considered the entire record in this matter: the pleadings, the witnesses, both live and by deposition, the exhibits of the parties, and the arguments and memorandums of counsel. The Court has concluded that the claimant and his wife were not credible witnesses, and that his disputed workers’ compensation claim has no merit.”
In order to determine whether there was manifest error, the record must be reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-C-1698 (La.1/14/94), 630 So.2d 706. We have reviewed the record in its entirety and, given the inconsistencies in the parties’ testimony and the trial judge’s determination of credibility, can find no manifest error in his finding that the workers’ compensation claim is without merit.
For the above discussed reasons, the decision of the workers’ compensation *568 court, dismissing claimant’s disputed compensation claim, is affirmed.
AFFIRMED.