968 So.2d 321 (2007)
Heidi Finley HARPER and Heath Finley, Plaintiffs-Appellants
v.
Dr. Roger SMITH and Dr. Russell Cummings, Defendant-Appellees.
No. 42,586-CA.
Court of Appeal of Louisiana, Second Circuit.
October 24, 2007.
Rehearing Denied November 29, 2007.
*322 Sedric E. Banks, Monroe, for Appellants.
Crawford & Joyce by Brian E. Crawford, Monroe, for Appellees, Dr. Roger Smith & Louisiana Medical Mutual Insurance.
Before WILLIAMS, PEATROSS & DREW, JJ.
PEATROSS, J.
Plaintiffs, Heidi Finley Harper and Heath Finley, filed this medical malpractice action following the death of their father, Reverend Glynn "Fobi" Finley. After the second trial of this matter, a jury agreed with the medical review panel that Defendant, Dr. Roger Smith, did not breach the standard of care following his treatment of Rev. Finley at Franklin Medical Center ("FMC"), in Winnsboro, Louisiana, on the dates of April 29-30, 2001.[1] *323 Ms. Harper and Mr. Finley are the sole surviving children of Rev. Finley.[2] The trial court denied Plaintiffs' motion for JNOV and/or new trial and Plaintiffs now appeal. For the reasons stated herein, we affirm.

FACTS
Rev. Finley presented at Dr. Smith's office on Friday, April 27, 2001, complaining of severe abdominal pain. Dr. Smith diagnosed partial small bowel obstruction and noted suspicion for adhesions due to Rev. Finley's history of past abdominal surgery. The record reflects that Dr. Smith advised Rev. Finley that he should be hospitalized, but that Rev. Finley did not want to go to the hospital. Dr. Smith thought that the "kink" in the bowel might correct itself, so he sent Rev. Finley home with narcotic pain medication and ordered bowel rest. He further told Rev. Finley to go to FMC emergency room if the pain worsened. During this visit, Rev. Finley also advised Dr. Smith that, if surgery was required, he preferred going to LSU Shreveport where he was familiar with the surgeons. Rev. Finley did not have medical insurance, but was on Medicaid and had previously received surgical treatment at LSU Shreveport.
Sunday afternoon at 5:30, Rev. Finley presented at FMC emergency room complaining of severe and worsened abdominal pain. Ms. Harper signed the requisite documents assuming the role of responsible party for her father's medical care. Dr. Smith was not at the hospital, but was on call for the weekend. He consulted with the emergency room physician by telephone and the diagnosis of small bowel obstruction with suspicion of adhesions was confirmed. At 8:00 p.m., Dr. Smith ordered that Rev. Finley be admitted to ICU where he would receive constant nurse supervision. During the night, nurses called Dr. Smith four times with status reports and requests for additional pain medication. At 7:20 Monday morning, Rev. Finley's condition was further deteriorated, with severe pain and hallucinations from the pain medication. At 7:45 a.m., Dr. Smith arrived at the hospital, examined Rev. Finley and immediately determined that he needed emergency surgery. Dr. Smith testified that, at this point, the standard practice would be to call in a surgeon to evaluate the patient. Dr. Smith was not a surgeon; therefore, following Rev. Finley's request, he began making arrangements around 8:00 a.m., for a transfer to LSU Shreveport for surgical consultation.
Ms. Harper signed the transfer documents as Rev. Finley's responsible party. Dr. Smith testified that he believed, at that point, that Rev. Finley would be examined by a surgeon at LSU Shreveport by 10:00 a.m. Dr. Smith further testified that he believed that Rev. Finley was at high risk for bowel strangulation or infarction, but that he would remain stable until he arrived at LSU Shreveport. Thinking that the transfer was a "done deal," Dr. Smith returned to his office to see patients.
Significantly, however, a transfer to LSU Shreveport cannot be made until a hospital bed is assigned to the patient by LSU Shreveport. Indeed, an ambulance request cannot be made until such assignment has been made. A short while later, after the signed documents had been submitted to LSU Shreveport requesting a *324 transfer, a nurse calling LSU to check the status of the transfer was informed that LSU Shreveport had apparently lost the paperwork on Rev. Finley and that there was no longer a bed available for him. Dr. Smith testified that he had never had an instance where a patient was accepted for transfer and that acceptance was subsequently reversed. He testified that he believed he was "being stonewalled" regarding his attempt to get Rev. Finley a bed at LSU Shreveport. Ultimately, this apparent administrative failure on the part of LSU Shreveport removed that facility as a viable option for Rev. Finley; and, therefore, Dr. Smith began exploring other options, including specifically a transfer to E.A. Conway Medical Center  LSU Monroe.
Ms. Harper testified that she spoke with Dr. Smith at his office at 10:20 a.m. to ask the reason for the delay with the transfer of her father. Also in the meantime, Plaintiffs learned from a friend who was a nurse on duty at FMC that there was a surgeon on call at FMC, Dr. Russell Cummings. Until the noon hour, Rev. Finley remained in stable condition and Dr. Smith, therefore, chose to attempt a transfer to LSU Monroe in light of Rev. Finley's desire to be treated in the LSU system. At 12:15 p.m., however, Rev. Finley experienced an episode of unconsciousness while trying to stand by the bedside. His respirations increased and pulse slowed. While no resuscitative measures were performed, a Code Blue was called to get immediate assistance with the patient, who was then helped into bed and monitored closely. Dr. Smith arrived at ICU to find Rev. Finley in a worsened condition and desperately in need of emergency surgery. The medical records indicate that blood gases were drawn on Rev. Finley at 12:23 p.m. and the results were printed at 12:27 p.m. showing that Rev. Finley's bowel had infarcted and gangrene was present. At this point, Dr. Smith testified that he knew that Rev. Finley would not survive without immediate surgical intervention.
As previously stated, Dr. Smith at this point had not contacted Dr. Cummings for consultation because Rev. Finley had been stable for transfer. By the time the blood gas results were obtained, Dr. Cummings had already returned to Columbia and was no longer immediately available for surgery. Dr. Smith testified that he did, however, telephone Dr. Cummings for assistance in "pulling some strings" to get Rev. Finley accepted in Monroe quickly. At 3:00 p.m., a transfer to LSU Monroe was made and Rev. Finley was loaded into the ambulance. At this time, his blood pressure was 100/60 and his pulse rate was 168. The medical testimony was consistent that this condition was not ideal for a transfer of the patient. The paperwork that was completed and signed by Ms. Harper that morning at 8:00 authorizing transfer to LSU Shreveport was altered to reflect Monroe instead of Shreveport.
As previously stated, Dr. Cummings was the surgeon on call at FMC during Rev. Finley's hospitalization. There is no dispute that Dr. Cummings was qualified to perform the surgery that Rev. Finley needed. There is also no dispute that FMC did not have a full-time surgery team and that most of the surgery performed at FMC is elective. In order to have an unscheduled surgery at FMC, however, such as emergency surgery, the surgical team must be located and assembled. On the morning of April 30, the record indicates that Dr. Cummings was performing surgery in Columbia, Louisiana, between the hours of 7:00 and 9:00 a.m. He arrived at FMC between 9:00 and 10:00 a.m. and performed a scheduled surgery until approximately 11:00 a.m. He then left the hospital, had lunch and returned *325 to his office in Columbia, Louisiana, to see patients.
During this brief time (10:00-11:00), had Dr. Smith believed it to be necessary, Dr. Cummings would have been available or accessible to perform the surgery on Rev. Finley. Dr. Smith testified, however, that, during this time, Rev. Finley was stable enough to transfer to LSU Shreveport, as was his desire, and he believed that the transfer was "a go." According to Dr. Smith's testimony, by the time he was made aware that there would be no transfer to Shreveport and Rev. Finley's condition had become critical, Dr. Cummings had returned to Columbia. For this reason, Dr. Smith telephoned Dr. Cummings for assistance with the transfer rather than for a surgical consultation. Dr. Cummings testified that he recalled telling Dr. Smith that it would take as long for him to get a surgery team assembled and back to FMC as it would to get Rev. Finley to Monroe. Dr. Smith proceeded with the transfer to LSU Monroe.
Rev. Finley arrived in Monroe after the 50-minute transport; but, less than half an hour from arrival, he passed away. Efforts to revive him in the Monroe emergency room were unsuccessful. This suit followed and, after a second trial, an emotional jury found that Dr. Smith did not breach the standard of care in his treatment of Rev. Finley. This appeal ensued.

DISCUSSION
The manifest error standard applies to our review of medical malpractice cases. Jackson v. Tulane Medical Center Hosp. and Clinic, 05-1594 (La.10/17/06), 942 So.2d 509. Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. Smith v. Louisiana Dept. of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). In order to reverse a fact finder's determination, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. Salvant v. State, 05-2126 (La.7/6/06), 935 So.2d 646; Stobart, supra. The appellate court must not reweigh the evidence or substitute its own factual findings because it would have decided the case differently. Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La.4/3/02), 816 So.2d 270.
Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell, supra. Although the standard of review is high, it does not require this court to abdicate its responsibility to review the trial court's findings, nor does it require this court to affirm a jury's verdict that is manifestly erroneous. Gordon v. Willis Knighton Medical Center, 27,044 (La. App.2d Cir.6/21/95), 661 So.2d 991, writs denied, 95-2776 and 95-2783 (La.1/26/96), 666 So.2d 679. Where the fact finder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
In their assignment of error, Plaintiffs enumerate nine aspects in which they argue Dr. Smith's treatment of their father fell below the standard of care. Succinctly *326 stated, Plaintiffs argue that Dr. Smith knew on Friday that Rev. Finley had a bowel obstruction and admitted that, as of Monday morning, he knew that Rev. Finley was at a very "high risk" of bowel strangulation and needed emergency surgery. As Rev. Finley's condition deteriorated, Dr. Smith continued to effectuate a transfer rather than consulting the surgeon on call at FMC, who, according to Plaintiffs, was present at the hospital and competent to perform the surgery. Plaintiffs maintain that they requested that Dr. Smith call in Dr. Cummings after their nurse/friend told them that Dr. Cummings was on call, but Dr. Smith failed to do so. Plaintiffs submit that Dr. Smith transferred an unstable, critically ill patient rather than calling in the surgeon on call at FMC. Plaintiffs' arguments are laced with references to the fact that Rev. Finley had no insurance and was a "self-pay" patient. They assert that Dr. Smith made comments to the effect that "doctors don't work for free." It is clear that Plaintiffs believe that Dr. Smith denied their father the surgery that would have saved his life because of his assumed inability to pay for medical treatment.
Dr. Smith maintains that this is not a case motivated by financial concerns. He acknowledges the tragedy of the circumstances that befell Rev. Finley and accepts responsibility for all decisions made during Rev. Finley's final illness. Dr. Smith advises the court, however, to focus only on the medical expert testimony presented at trial, which supports the conclusion that Dr. Smith's treatment of Rev. Finley's abdominal symptoms was well within the standard of care for an internist. He suggests that this is a case involving medical judgment and that his judgment to transfer Rev. Finley to a facility with a higher level of surgical care was within the standard of care. Dr. Smith points out that FMC is not a high level medical center and only performs low-risk type surgeries as a rule. Dr. Smith highlights the testimony of Dr. Keith Mansel, Plaintiffs' expert, who did not criticize Dr. Smith's treatment plan. Dr. Mansel challenged Dr. Smith's judgment only insofar as he failed to consult Dr. Cummings on Monday morning when he determined that a surgical consult was necessary. In this respect, Dr. Smith argues that it is inaccurate that Dr. Cummings was present at FMC and available for a consult the entire Monday morning. As previously noted, Dr. Smith submits that Dr. Cummings was in surgery in Columbia from 7:00-9:00 a.m. and arrived at FMC at approximately 10:00 a.m. Thus, no surgical consult was available during the early morning hours. In addition, Dr. Smith emphasizes that it was Rev. Finley's directive that surgery be performed at LSU Shreveport.
Dr. Smith further emphasizes that it was an unprecedented event for LSU Shreveport to accept the transfer of a patient and then subsequently change that decision, stating that a bed could not be assigned. Dr. Smith asserts that he found out about this subsequent denial of the transfer at 11:00 a.m., not 9:00 a.m. as suggested by Plaintiffs. He argues that, at the point LSU turned the transfer down, he had thought the transfer was a "done deal" and had dictated his discharge summary. This unprecedented change of authorization changed matters significantly and Dr. Smith then started investigating a transfer to LSU Monroe. When the transfer to Monroe was authorized, he determined that Rev. Finley was stable enough to make the transfer. Since LSU Monroe was, like Shreveport, a higher level surgical facility, he used his medical judgment to send Rev. Finley there for surgery.
Dr. Smith maintains that Plaintiffs are viewing this case entirely in hindsight and *327 their nine points under their assignment of error are unsupported by the record. He submits that he made a sound medical judgment that was within the standard of care, especially in light of the fact that there was not a surgical team ready and available in the early morning hours at FMC, that the patient had expressed the desire for surgery to be done at LSU and that the surgical facility at LSU is better equipped to handle this high risk surgery than FMC. We agree.
The record in this case presents an extremely unfortunate situation in which the medical system failed a patient. While administrative failures certainly contributed to Rev. Finley's demise, we cannot say that the finder of fact was manifestly erroneous in finding that Dr. Smith's treatment of Rev. Finley fell within the standard of care for an internist. This record contains a reasonable basis for reaching this conclusion. Dr. Smith assented to Rev. Finley's wishes not to be hospitalized on Friday afternoon. The medical testimony reflects that it was entirely appropriate for Dr. Smith to consult with the emergency room physician on admittance Sunday afternoon and to follow Rev. Finley's condition overnight by telephone. Dr. Smith immediately began the transfer process following his examination of Rev. Finley early Monday morning. The medical testimony supports that Rev. Finley, although needing emergency surgery, was stable at that point. Dr. Smith testified that he was made aware that the transfer to LSU Shreveport was not going to happen at 11:00 a.m. By this time, Dr. Cummings, who had been at FMC shortly before that, was returning to his office in Columbia. In line with Rev. Finley's request to be treated at LSU, Dr. Smith decided to attempt a transfer to LSU Monroe. The record supports the conclusion that it was not until Rev. Finley coded and his blood gases were drawn that Dr. Smith knew that the bowel had infarcted and gangrene was present. Dr. Smith testified that this was the point that he considered Rev. Finley's condition to be life threatening. At this time, there was no surgeon or surgical team available at FMC. Dr. Smith contacted Dr. Cummings in Columbia for assistance in expediting the transfer to Monroe. The transfer was effectuated; however, tragically, Rev. Finley did not survive long enough to have the surgery.
Dr. Ron Morgan, a physician who was on the medical review panel, explained the panel's opinion and that one must view the medical decisions made by Dr. Smith regarding Rev. Finley in a forward-looking fashion as a physician not knowing what will ultimately transpire as a consequence of his decisions. According to Dr. Morgan's testimony, when viewed from this perspective, as opposed to hindsight, the medical judgments and decisions made by Dr. Smith were appropriate and within the standard of care. With great attention and deliberation, the jury agreed and we hold that this record provides a reasonable basis for that conclusion.

CONCLUSION
For the foregoing reasons, the judgment in favor of Dr. Roger Smith is affirmed. Costs of appeal are assessed to Plaintiffs, Heidi Finley Harper and Heath Finley.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS & DREW, JJ.
Rehearing denied.
NOTES
[1] The case first went to trial in March 2004 and the jury was unable to reach a decision. The second trial was held in October 2004 and, after heated deliberations, the jury found in favor of Dr. Smith.
[2] Dr. Russell Cummings, the surgeon on call at FMC during Rev. Finley's treatment, was also named as a defendant and was dismissed on a motion for summary judgment. FMC was later added as a defendant, but was dismissed on an exception of prescription. Those rulings were not appealed.