834 So.2d 642 (2002)
Harold PALMER, Plaintiff-Appellant,
v.
SCHOONER PETROLEUM SERVICES, Defendant-Appellee.
No. 02-397.
Court of Appeal of Louisiana, Third Circuit.
December 27, 2002.
*644 Gregory W. Belfour, Lake Charles, LA, for Plaintiff/Appellant: Harold Palmer.
Henry H. LeBas, Todd A. Delcambre, Lafayette, LA, for Defendant/Appellee: Schooner Petroleum Services.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, BILLIE C. WOODARD, JIMMIE C. PETERS, and MARC T. AMY, Judges.
THIBODEAUX, Judge.
In this workers' compensation case, plaintiff, Harold Palmer, appeals a judgment in favor of defendants, Schooner Petroleum Services and Eagle Pacific Insurance Company (Eagle Pacific), finding that he did not suffer an accident and consequent injury while in the course and scope of his employment with Schooner; that his workers' compensation benefits were properly terminated because he committed fraud in violation of La.R.S. 23:1208; and, that he was not entitled to supplemental earnings benefits (SEB) because he was terminated from employment with Schooner for poor performance.
Schooner and Eagle Pacific answer Palmer's appeal and contest the finding of the workers' compensation judge (WCJ) that they owe a $2,000 penalty for their failure to pay an outstanding medical bill incurred by Palmer.
We reverse the finding of the WCJ that Palmer was not injured while in the course and scope of his employment. Further, we reverse the findings of the WCJ that Palmer violated La.R.S. 23:1208 and that Palmer is not entitled to SEBs. With respect to the WCJ's award of penalties for the defendants' failure to pay Palmer's outstanding medical bill, we affirm.

I.

ISSUES
We shall consider:
(1) whether the WCJ committed error in finding that Palmer was not involved in an accident that caused an injury to his back while in the course and scope of his employment with Schooner;
(2) whether the WCJ erred in finding that Palmer violated the provisions of La.R.S. 23:1208 and has thereby forfeited workers' compensation benefits because his testimony was inconsistent with his activities as depicted in a surveillance video; and,
(3) whether he is not entitled to receive SEBs because he was fired for performing his work duties poorly.
Schooner and Eagle Pacific answered Palmer's appeal. They entreat us to consider whether the trial court properly assessed penalties against them for the failure to pay one of Palmer's outstanding medical bills since it found that Palmer did not suffer an accident and injury while in the course and scope of his employment with Schooner.

II.

FACTS
The parties do not dispute the fact that on June 4, 1998, Palmer was an employee of Schooner. Further, there is no dispute that Palmer continued to work for Schooner until he was terminated on September 30, 1998. The parties also agree that Palmer was paid $3,400 per month in salary during the time he worked for Schooner. The defendants agree that Palmer's chiropractor bill of $170 was not timely paid and that Schooner had knowledge more than sixty days prior to trial that the bill was unpaid. However, the defendants did not stipulate that they are obligated to *645 pay the bill. The parties are in dispute as to the events at the Schooner shop located in Scott, Louisiana on June 4, 1998. Palmer contends that he injured his back while in the course and scope of his employment with Schooner on June 4, 1998. However, Schooner contends that an accident causing injury to Palmer's back did not occur while Palmer was engaged in work for Schooner on June 4, 1998.
Palmer testified that he began working for Schooner in September 1996 as a "sales and service person." He explained that his job duties in that position entailed calling on customers to sell Schooner's equipment and services as well as perform the services sold. The service part of his job involved "rig[ging] up the equipment, operat[ing] that equipment, then rig[ging] it down and bring[ing] it back to the shop." Palmer testified that the equipment weighed between twenty-five to thirty pounds and up. He was also required to climb stairs. Palmer also testified that sometimes he was required to do physical manual labor that exceeded his job description. Palmer testified on June 4, 1998, he was injured while assisting his co-worker, Jason Monk, in placing a valve that weighed approximately one hundred pounds on a pallet. They were not using a fork lift because one was not available. Palmer also testified that he and Monk did not wait for an available fork lift because his supervisor, Billy Knotts, wanted them to clean the shop as fast as possible. Palmer contends that while lifting the valve, he twisted his back and experienced bad pain. Palmer then walked into the office and told Ronald Hamilton what happened and went to the doctor. Palmer told Monk that he hurt his back, but did not "make a big deal" about his pain.
Hamilton testified that he did not remember Palmer telling him about the injury to his back on June 4, 1998. However, Hamilton also testified that he did write an accident report soon after the June 4, 1998 incident, when Palmer informed him his doctor told him not to lift anything heavy. Hamilton further testified that he did not ask Palmer's co-worker, Monk, about Palmer's accident until almost a year after June 4, 1998, when Palmer filed a workers' compensation claim.
Monk testified by deposition that no accident occurred. Monk's deposition regarding the incident was not taken until June 23, 2000, two years after the incident.
Palmer testified that he left work early on June 4, 1998, after the injury and saw a chiropractor, Dr. William O. Ring, the next day. Dr. Ring told Palmer that he had a back problem and that he should not lift anything, bend, stoop or twist because it would aggravate his condition. Palmer testified that when he returned to work he told the person in the office, Hamilton, about his injury and the restrictions placed on his activities by Dr. Ring. An accident report was written and Schooner limited Palmer's activities. Hamilton testified that he was aware that after June 4, 1998, Palmer could not lift anything heavier than five pounds. At first, Palmer saw Dr. Ring three times per week, taking off from work to attend his treatments. After the first month of visits, Palmer saw Dr. Ring about once a month.
Palmer was also seen by Dr. Jerald Watts, an orthopaedic surgeon, at the request of Eagle Pacific. Dr. Watts' diagnosis was essentially the same as that of Dr. Ring. Dr. Watts imposed the same physical restrictions on Palmer as Dr. Ring. Palmer also saw Dr. Clifton Shepard, who practiced orthopaedic surgery with Dr. Watts. Palmer testified that he was not asked by either Dr. Watts or Dr. Shepard about the type of work he performed for Schooner.
*646 Palmer testified that on recommendation of Dr. Ring, he saw Dr. Roland Miller because he was still having trouble with his back. Dr. Miller told Palmer that he was not a candidate for surgery but that he did have a problem with his back. Dr. Miller recommended that Palmer see Dr. Ponder, a pain management specialist. Palmer testified that he saw Dr. Ponder several years ago for a problem he experienced with his elbow. When Palmer called Dr. Ponder he was told that since Dr. Ponder had become a pain management specialist that it would be better if Palmer saw Dr. Theresa Ritter.
Palmer testified that it took six months to get permission to see Dr. Ritter from Eagle Pacific. Palmer was eventually able to see Dr. Ritter in September 1999. Eagle Pacific did not pay for that visit. It was not until March 2000 that Eagle Pacific approved Palmer's visits with Dr. Ritter.
On May 22, 1999, Palmer filed a disputed claim for workers' compensation benefits. Trial was held on April 24, 2001, and continued until August 28, 2001. At the conclusion of the presentation of evidence on August 28, 2001, the case was held open for the submission of briefs by the parties. Palmer filed his post-trial brief on September 25, 2001, and on October 24, 2001, the WCJ rendered judgment in favor of the defendants with respect to the payment of workers' compensation benefits. However, the WCJ awarded Palmer penalties in the amount of $2,000 for the defendants' failure to pay an outstanding medical bill. It is from this judgment that on December 11, 2001, Palmer filed a motion for appeal. Schooner and Eagle Pacific answered Palmer's appeal contesting the WCJ's finding that they owe Palmer penalties and attorney fees for failing to pay the outstanding medical bill of Dr. Ring when the court found that Palmer was guilty of fraud pursuant to La.R.S. 23:1208.

III.

STANDARD OF REVIEW
The standard of review in a worker's compensation hearing was set out in Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 7-8 (La.7/1/97), 696 So.2d 551, 556 as follows:
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of review. Smith v. Louisiana Dep't of Corrections, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; Freeman v. Poulon/Weed Eater, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Freeman, 93-1530 at p. 5, 630 So.2d at 737-38; Stobart v. State, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La. 1990).
However, in the present case the WCJ did not articulate the evidentiary facts she relied upon for her conclusion that an accident did not occur, nor did the WCJ articulate the facts she relied upon to conclude that Palmer did not suffer an injury while in the course and scope of his *647 employment with Schooner. When a trial court's reasons do not articulate the theory or the evidentiary facts upon which its conclusion is based, and the trial court's findings of fact and reasons are not clearly implied by the record, deference is not owed. Bloxom v. Bloxom, 512 So.2d 839 (La.1987). The WCJ articulated reasons for only the La.R.S. 23:1208 violation and the refusal to award supplemental earnings benefits (SEB) to Palmer. Thus, with regard to the issue of whether an accident occurred and the issue of whether Palmer was injured while within the course and scope of his employment, we will accord no deference to the WCJ's judgment and review the record de novo.

IV.

LAW AND DISCUSSION

Occurrence of Accident While in the Course and Scope of Employment
Palmer asserts that the WCJ committed error in finding that he failed to prove the occurrence of an accident while in the course and scope of his employment with Schooner, and that the injury to his back was causally related to his work accident.
In Bryan v. Allstate Timber Co., 98-840, pp. 3-4 (La.App. 3 Cir. 12/16/98); 724 So.2d 853, 855, this court discussed the law applicable to this case, stating:
La.R.S. 23:1031 requires a workers' compensation claimant to initially establish "personal injury by accident out of and in the course of his employment." Bruno v. Harbert International, Inc., 593 So.2d 357, 360 (La.1992). An accident for purposes of workers' compensation law, is defined in La.R.S. 23:1021 as follows:
"Accident" means an unexpected or unforseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
To recover workers' compensation benefits, a claimant must establish by a preponderance of the evidence that an accident occurred on the job site and that an injury was sustained. Garner v. Sheats & Frazier, 95-39 (La.App. 3 Cir. 7/5/95); 663 So.2d 57. A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident. Garner, 663 So.2d at 60. The evidence is viewed in a light most favorable to the claimant. When there is proof of an accident and attendant disability, without an intervening cause, it is presumed that the accident caused the disability.
In the present case, we find that the record shows that Palmer's report of a work-related injury was consistent and plausible. Palmer testified that he and Monk were working together on June 4, 1998, the date of the accident, and that when he hurt his back he informed Monk of the incident. On the other hand Monk testified, almost two years after the incident, that Palmer did not tell him about his back. Defendants rely heavily on Monk's testimony that Palmer did not inform him of an accident to conclude that no accident occurred. We find that reliance misplaced. First, Monk was not asked about Palmer's accident until a substantial amount of time had passed since the incident. Second, an accident report was completed a day after the incident on June 5, 1998. Third, the record reflects *648 that Palmer left work early on June 4, 1998, and saw a doctor for his back pain the next day. Fourth, when Palmer returned to work, his employer was aware that he was restricted to lifting no more than five pounds. Fifth, Palmer testified that when he hurt his back, he did not "make a big deal" about the accident or his back pain to Monk. Palmer simply stated that he hurt his back and he was going into the office to report the injury. Last, Monk testified that subsequent to June 4, 1998, Palmer frequently left work to attend doctors' appointments.
In determining whether the worker has discharged his or her burden of proof, we accept as true a witness' uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of this testimony. The only evidence in the record contradicting Palmer's testimony that an accident occurred while he was in the course and scope of his employment with Schooner on June 4, 1998, is that of his co-worker, Monk. As we previously noted, Monk's testimony is unreliable on this issue since he was not asked about Palmer's accident until almost two years after the incident, especially given the evidence of the accident report and Palmer's doctor visits soon after the incident in June 1998, as well as the fact that Palmer said that he did not "make a big deal" about hurting his back. Palmer's version of the events surrounding his accident is reasonably credible, and his medical records sufficiently corroborate that he was injured on June 4, 1998, while in the course and scope of his employment. Accordingly, the WCJ's finding that claimant did not suffer an on-the-job injury is in error and reversed.
Fraud in Violation of La.R.S. 23:1208
Louisiana Revised Statutes 23:1208 provides in pertinent part as follows:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
....
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
At the trial of this matter, the defendants argued that Palmer exaggerated and distorted the details regarding his injury resulting in Palmer making willful and false statements for the purpose of obtaining benefits. To the contrary, Palmer asserts that he did not willfully make false statements or misrepresentations to obtain workers' compensation benefits. At trial, Palmer testified that he could walk, sit, stoop, and bend but only for a limited amount of time. Schooner and Eagle Pacific rely on video surveillance taken of Palmer's activities on fourteen different days to prove their claim that Palmer lied about his disabilities. Essentially, the defendants assert that Palmer's testimony about his back problems and disabilities is inconsistent with what is shown in the video surveillance tape recordings. However, mere contradiction between Palmer's testimony and the videotape recordings does not necessarily mean a denial of benefits due to a violation of La.R.S. 23:1208. Pursuant to Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95); 660 So.2d 7, there must be a false statement or statements willfully made for the purpose of obtaining workers' compensation benefits.
We have reviewed the videotapes in this case. Rather than supporting a willful inconsistency between Palmer's account *649 of his injury and his activities, the videotapes confirm that Palmer does little or no strenuous work. Most of the videotapes show Palmer driving around in his pickup truck, fishing from the intracoastal canal bridge and alternately leaning on a bridge railing and standing upright. Palmer is also shown carrying a small package in his hand and, on one occasion, leaving a grocery store carrying a very small bag. He is also shown pumping gasoline into his truck. On another video, Palmer is shown walking rather slowly and somewhat tentatively on a sidewalk. We find that this supports Palmer's position that he could not engage in walking, stooping, sitting and bending activities for an extended length of time. The only activities shown on the videotape that might be considered strenuous is Palmer's use of a hydraulic jack to jack up a car while lying on the ground, and Palmer shown untying a boat from a trailer hitch and helping to hook a small tractor/four wheeler to a trailer. Palmer testified that he has good and bad days. He further testified that when he does anything beyond his physical limitations, he suffers great pain thereafter. Moreover, Palmer did not imply he was unable to do any activity whatsoever. Thus, we find the videotapes unconvincing and not illustrative of the type of fraudulent activity contemplated by La.R.S. 23:1208. While there may have been some variance between Palmer's testimony and the videotapes, the variance was not sufficient to warrant a finding of fraud. Therefore, the WCJ's finding that Palmer committed fraud in violation of La.R.S. 23:1208 was in error.
Supplemental Earnings Benefits
Schooner and Eagle Pacific contend that Palmer is not entitled to SEBs because Schooner offered him "a post-accident job that allowed him to earn at least 90% of his pre-accident wages." Palmer does not contest the fact that he continued to work at Schooner after the June 4, 1998, accident in a light duty position at the same wage rate he earned before the accident until he was terminated on September 30, 1998. Palmer contends that he was terminated due to lack of available work at Schooner. On the other hand, the defendants contend that Palmer was fired from Schooner due to his substandard job performance.
In Allen v. City of Shreveport, 618 So.2d 386, 388 (La.1993), the supreme court summarized the purpose of SEBs as follows:
Supplemental earnings benefits were established in 1983 as a method of replacement of lost wages for partially disabled employees. The benefits are designed to replace lost earning capacity of workers who do not fall under the definition of total disability. When an injured employee is able to engage in a gainful occupation, but because of his work-related disability is unable to earn wages at the level he was earning prior to his injury, he is classified as partially disabled. And when the partial disability reaches the level that the employee is unable to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury, he is entitled to supplemental earnings benefits, calculated according to a formula relating to his pre-injury wages and the wages he `is able to earn' in any employment or self-employment after the injury. La.Rev.Stat. 23:1221(3)(a). (Footnote omitted).
Integral to an employee's claim for SEBs is his proof by a preponderance of the evidence that he is disabled due to a work-related injury that rendered him unable to earn ninety percent of his pre-injury wages. "In determining if an injured employee has made out a prima facie *650 case of entitlement to supplemental earnings benefits, the trial court may and should take into account all those factors which might bear on an employee's ability to earn a wage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La. 1989). La.R.S. 23:1221(3)(a). Once the employee seeking SEB establishes his prima facie case, the burden shifts to the employer to show that the employee is physically capable of work and that the work was offered or available in the employee's or employer's community or reasonable geographic region. La.R.S. 23:1221(3)(c)(i). If the employer meets this burden of proof, then the employee must show by clear and convincing evidence, unaided by any presumption of disability, that he is unable to perform the employment offered or available solely as a consequence of substantial pain. La.R.S. 23:1221(3)(c)(ii); Moore v. Sanderson Farms, Inc., 95-2042, p. 8 (La.App. 1st Cir.5/10/96); 674 So.2d 478, 483, writ denied, 96-1399 (La.9/13/96); 679 So.2d 106. Essentially, Schooner argues that it met its burden of proof because it offered Palmer available work in the office where Palmer worked prior to his accident, and that termination of Palmer for his substandard work precludes the award of SEBs under La.R.S. 23:1221. We disagree.
Contrary to Schooner's above argument, it is a claimant's refusal to accept employment that fits within his abilities and/or disabilities which is made available to him that precludes an award of SEBs. In other words, "[t]he SEB statute does not permit a claimant to choose not to work and still collect SEB when he is physically able to work and jobs are available." Blanchard v. Federal Express Corp., 95-0349, p. 13 (La.App. 1 Cir. 11/9/95); 665 So.2d 11, 13. There is no evidence in the record that Palmer refused the work offered to him; in fact, he worked with Schooner until Schooner terminated him. Termination does not destroy one's entitlement to SEB. See generally, Braud v. First Nat'l Bank of Gonzales, 98-2106 (La.App. 1 Cir. 6/23/02); 763 So.2d 829 (where a bank employee, who suffered severe mental trauma after a bank robbery and who was later terminated due to poor performance, was not determined to be ineligible of SEB because of her termination).
To hold that an employee's termination destroys an employee injured on the job's entitlement to SEB would provide incentive for employers to allow injured employees to return to work and thereafter terminate them to avoid paying SEB. Palmer's injuries prevented him from doing heavy duty manual labor, the type of work he performed for Schooner before his June 4, 1998, accident. The medical records of Drs. Miller, Blanda and Ritter support Palmer's inability to engage in heavy manual labor. Dr. Ritter's records state that Palmer is limited to sedentary work release with a maximum lifting weight of ten pounds. Palmer's functional capacity evaluation of June 27 and 28, 2000, notes that Palmer would be able to do light to medium duty work. After Palmer's termination on September 30, 1998 through December 2000, he did not work for wages. Palmer was able to obtain employment with Patco as a dispatcher earning $150 per day. His work schedule is seven days on and seven days off. His annual income with Patco is approximately $26,300. Palmer's base rate at Schooner was $48,000 per year. Thus, the record amply reflects that he is unable to earn at least ninety percent of his pre-injury wages.
It is unnecessary to reach the issue of the refusal of the WCJ to allow evidence of Palmer's proper work performance to rebut *651 the evidence of his poor work performance leading up to his termination that was submitted at trial by Schooner. The WCJ's factual determination of poor work performance is manifestly erroneous. The record simply does not reasonably substantiate a degree of poor work performance that would be tantamount to Palmer's refusal to work and a concomitant loss of SEB. The conduct of Mr. Palmer of which Schooner complains does not reach the level of egregious behavior evidenced in McKenzie v. Evans Quality Temporaries, 99-518 (La.App. 5 Cir. 10/26/99); 746 So.2d 163 (where the claimant refused physical therapy, had been told by his physicians to return to light-duty work, did not accept the company's offer of light-duty work until three months after the accident, worked for two weeks in that position, left and never returned); Degrasse v. Elevating Boats, Inc., 98-1406 (La.App. 4 Cir. 3/10/99); 740 So.2d 660, writ denied, 99-1807 (La.10/15/99); 748 So.2d 1147 (where employee injured himself and never returned to work and refused to take a required drug test); Fusilier v. Slick Const. Co., 94-11 (La.App. 3 Cir. 6/1/94); 640 So.2d 788 (where employee failed to attempt to do light-duty work offered by his employer); and Blanchard v. Federal Exp. Corp. (where employee refused to do any available work because it interfered with his church duties). Therefore, we find that Palmer is entitled to SEB.
Penalties
The WCJ awarded Palmer penalties in the amount of $2,000 because the defendants failed to pay an outstanding medical bill associated with Palmer's injury to his back. Schooner answered Palmer's appeal asserting that the WCJ erred in awarding penalties when she found that Palmer suffered no on-the-job accident and injury. Schooner does not dispute the amount of the outstanding medical bill, nor that it failed to pay the bill.
As we noted above, we find that Palmer did suffer an injury while in the course and scope of his employment with Schooner. "An employer may escape liability for its delays in providing medical benefits if: (1) its nonpayment stemmed from conditions over which the employer had no control, or (2) the employer reasonably controverted the employee's right to such compensation or medical benefits. La.R.S. 23:1201(F)(2)." Thibodeaux v. Sunland Const., 00-1472, p. 7 (La.App. 3 Cir. 4/4/01); 782 So.2d 1203, 1208. The determination whether an employer should be cast with penalties and attorney fees in a workers' compensation case is essentially a question of fact and a WCJ's finding shall not be disturbed absent manifest error. Foster v. Liberty Rice Mill, 96-438 (La.App. 3 Cir. 12/11/96); 690 So.2d 792. The WCJ's determination that Schooner owed penalties to Palmer for its failure to pay the outstanding medical bill of Dr. Ring is inconsistent with the WCJ's finding that Palmer did not sustain an injury due to an on-the-job accident. However, after a thorough reading of the record and taking into consideration our finding that Palmer sustained an injury as a result of a work-related accident, we find that the WCJ was correct in assessing the defendants with a $2,000 penalty although not in accord with her rulings on the other issues in this case.

V.

CONCLUSION
For the reasons assigned, the judgment of the workers' compensation judge awarding the plaintiff, Harold Palmer, $2,000 in penalties against the defendants, Schooner Petroleum Services and Eagle Pacific Insurance Company, is affirmed. The judgment *652 of the workers' compensation judge is reversed as to the occurrence of an accident while in the course and scope of Harold Palmer's employment and his consequent back injury, her finding that Harold Palmer violated La.R.S. 23:1208 and her failure to award Harold Palmer supplemental earnings benefits.
Costs of this appeal are assessed against Schooner Petroleum Services and Eagle Pacific Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
SAUNDERS, J., concurs and assigns reasons.
WOODARD, J., concurs and assigns written reasons.
AMY, J., dissents and assigns written reasons.
SAUNDERS, J., concurring.
I agree with the majority opinion in this case on all but one matter. I disagree with the determination that our review of the trial judge's ruling should be de novo. The majority relies on the case of Bloxom v. Bloxom, 512 So.2d 839 (La.1987), for the proposition that the usual discretion afforded to a trial court's determination can be disregarded where the trial court provides no reasons for its ruling or where the reasons provided do not articulate the theory or the evidentiary facts upon which its conclusion is based. On a closer reading of Bloxom, however, it is clear such disregard of the usual discretion afforded to the trial court's ruling also requires that we be unable to infer from the trial court's reasons and the record the theory under which the trial court based its conclusions. Here, the trial court's reasons can be inferred from the record and evidence presented at trial. Therefore, I believe we are restricted to a manifest error/clearly wrong standard of review of the trial court's ruling. However, in my opinion there is sufficient evidence to justify the majorities findings, even under a manifest error review.
For the reasons stated above, I concur with the majority opinion of the court.
WOODARD, J., concurring.
I respectfully concur in the majority's opinion as a whole. In particular, I will address its decision to do a de novo review which I believe to be improper.
For its authority to conduct this review, the majority relies on its interpretation of Bloxom, our supreme court's decision in 1987. Judge Thibodeaux writes:
When a trial court's reasons do not articulate the theory or the evidentiary facts upon which its conclusion is based, and the trial court's findings of fact and reasons are not clearly implied by the record, deference is not owed. Bloxom v. Bloxom, 512 So.2d 839 (La. 1987). The WCJ articulated reasons for only the La.R.S. 23:1208 violation and the refusal to award supplemental earnings benefits (SEB) to Palmer. Thus, with regard to the issue of whether an accident occurred and the issue of whether Palmer was injured while within the course and scope of his employment, we will accord no deference to the WCJ's judgment and review the record de novo.

(Emphasis added.)
When one shepardizes this case, one finds Leal v. Dubois,[1] in which our supreme court expressly clarified that the above interpretation is not entirely what it meant by its holding in Bloxom: *653 It is well settled that the district court's finding of fact may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. Stobart v. State Through DOTD. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. An appellate court should not substitute its opinion for the conclusions made by the district court, which is in a unique position to see and hear the witnesses as they testify. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record.
While the court of appeal acknowledged this standard of review, it relied on our opinion in Bloxom v. Bloxom for the proposition that appellate courts may afford less deference to the district court's factual findings when the lower court fails to articulate the theory or evidentiary basis for its conclusions. The court of appeal reasoned that because the district court did not explain its reasons for not attributing plaintiff's injuries to the accident, it was not required to give deference to the district court's findings.
We find the court of appeal misinterpreted our decision in Bloxom. In that decision, we carefully explained that deference should be accorded to the trial court's decision, even if that decision is of less than ideal clarity, if the trial court's path may be reasonably discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record.
(Citations omitted. Emphasis added.)
While the trial court did not articulate reasons for its judgment regarding the "accident," its "path may be reasonably discerned, such as when its findings, reasons and exercise of discretion are necessarily and clearly implied by the record." In the instant case, the co-employee, Mr. Monk, stated that, contrary to Mr. Palmer's assertion, no accident occurred and that Mr. Palmer did not tell him that he was hurt. The fact that Mr. Monk was not asked about this until almost a year after the alleged accident does not make his memory inherently flawed, as the majority suggests. Thus, the trial court could have relied on this testimony to find no accident; its path of making the finding can readily be gleaned from the record. Thus, overturning its factual determination requires a manifest error review.
Notwithstanding, under that standard, the totality of the evidence is so overwhelmingly in favor of Mr. Palmer's claim that he had a work-related aggravation of a previous injury that it was unreasonable for the WCJ to make a contrary finding. Since there was not sufficient evidence in the record to uphold the WCJ's decision, it was manifestly erroneous.[2]
AMY, J., dissenting.
I respectfully dissent from the majority opinion. I conclude that an affirmation is warranted as to the workers' compensation judge's determination that the claimant failed to prove that a compensable accident occurred. The determination was necessarily *654 based on credibility evaluations, namely, that of the claimant's testimony. Due to the finding that no accident occurred, any remaining issues regarding entitlement to supplemental earnings benefits and the findings regarding the La.R.S. 23:1208 defense are moot. I do, however, find the $2000 award made for late payment of the chiropractic bill erroneous. As the workers' compensation judge determined that an accident did not occur, the obligation to provide timely payment of medical expenses never arose. Accordingly, I find reversal of this portion of the ruling appropriate.
NOTES
[1] 00-1285 (La.10/13/00); 769 So.2d 1182.
[2] See Daigrepont v, Grand Casino Avoyelles, 96-1170 (La.App. 3 Cir. 3/5/97); 692 So.2d 518.