# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-719


**RALPH WEAVER**

**VERSUS**

**CHICAGO BRIDGE & IRON**


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 3
PARISH OF CALCASIEU, NO. 17-02040
DIANNE MARIE MAYO, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Jonathan W. Perry, Judges.


**AFFIRMED.**

**John J. Rabalais**
**Matthew D. Crumhorn**
**Rabalais, Unland & Lorio**
**1404 Greengate Drive, Suite 110**
**Covington, Louisiana 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Chicago Bridge & Iron**

**Vincent Piazza Scallan**
**Attorney at Law**
**1515 Poydras Street, Suite 1825**
**New Orleans, Louisiana 70112**
**(504) 272-0444**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Ralph Weaver**

**SAVOIE, Judge.**

Defendant Chicago Bridge & Iron (CBI) appeals the judgment of the trial court, finding that Ralph Weaver did not commit fraud pursuant to La.R.S. 23:1208 and La.R.S. 23:1208.1; ordering Chicago Bridge & Iron to pay past and future Supplemental Earnings Benefits; and ordering Chicago Bridge & Iron to pay penalties and attorney's fees. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

Plaintiff Ralph Weaver filed a Disputed Claim for Compensation on April 3, 2017. He claimed that while working as an employee for CBI, he slipped and fell as he was stepping down from a crane on a rainy day, injuring his right knee. The accident occurred on September 13, 2016. Ralph Weaver alleged in the filing that no wage benefits had been paid and that all benefits were terminated on March 14, 2017. He requested penalties and attorney's fees for the arbitrary denial of his workers' compensation benefits.

CBI filed an Answer alleging that Weaver's injury was due to a pre-existing condition and not because of the workplace accident. CBI further alleged that Weaver made misrepresentations regarding previous injuries, disabilities and medical conditions. Due to these misrepresentations, CBI claims Weaver forfeited his entitlement to benefits and subjected himself to civil and criminal penalties under Section 1208.1 of the Workers' Compensation Act.

A trial was held in this matter on April 30, 2018. It was CBI's position that Weaver failed to provide truthful answers on an LA OWCA Second Injury Board Knowledge Questionnaire, which Weaver filled out upon being hired by CBI. In answering the questionnaire, Weaver reported that he suffered a "torn maniskes" on February 11, 2011, as a result of a prior workplace accident. CBI claimed that

Weaver "specifically denied ever having undergone any surgical procedures prior to being hired by [CBI]." CBI later learned, through discovery, that in 2006 and 2011, "Weaver had undergone two prior right knee surgeries for right meniscus tears."

Weaver countered that he submitted a "Medical Examination Report Form" on the same day as the questionnaire. On this form, he reported having surgery on his leg, finger, and elbow. Weaver further argued that as part of his job with CBI, he "was required to walk hundreds of yards, and even up to a mile over unsteady terrain to reach his crain [sic]." He would then climb a ladder between eight and eleven feet high to enter the crane. Weaver contended that the evidence showed that he was able to accomplish these tasks without assistance or accommodations from CBI. In addition, he was medically cleared by CBI's own doctors to work as a crane operator without restrictions.

Following his injury on September 13, 2016, Weaver returned to work with CBI with restrictions. In February 2017, Weaver suffered an infection in his knee following a round of injections which resulted in three missed days from work. When he returned to work on February 7, 2017, Weaver was told that CBI would no longer provide him with accommodations. Weaver submits that, at this point, he became entitled to supplemental earnings benefits. However, CBI alleged that Weaver was terminated for cause due to violation of company policies. It is Weaver's position that this was an effort by CBI to avoid paying his benefits.

The workers' compensation judge (WCJ) found that Weaver proved his injury of February 13, 2016, and he was entitled to supplemental earnings benefits from February 7, 2017, until present. The WCJ further found that CBI was arbitrary and capricious in the handling of this claim and in the termination of

Weaver's benefits. As a result, CBI was ordered to pay two thousand dollars ($2,000.00) in penalties and eight thousand dollars ($8,000) in attorney's fees.

Thereafter, CBI filed a Motion for New Trial, which was heard on June 11, 2018. The motion was denied, and CBI filed this appeal.

## ASSIGNMENTS OF ERROR

1.     The Workers' Compensation Judge erred in finding Weaver was entitled to indemnity benefits from February [7], 2017, to present.

2.     The Workers' Compensation Judge erred in finding Weaver did not violate La.R.S. 23:1208 Fraud Statute based on the multiple misrepresentations made throughout discovery about his pre-existing condition and treatment, as well as his disability status.

3.     The Workers' Compensation Judge committed manifest error in finding Weaver did not violate La. R.S. 23:1208.1, Fraud Statute, based on the facts and evidence presented at trial.

4.     The Workers' Compensation Judge erred in awarding penalties and attorney's fees for the arbitrary and capricious controversion of disputed claims for workers' compensation benefits.

## LAW AND DISCUSSION

*I.     Standard of Review*

This court in *Numa C. Hero & Son v. Leleux*, 15-305, p. 3 (La.App. 3 Cir. 10/28/15), 178 So.3d 595, 598, explained:

> Factual findings of the WCJ are subject to manifest error review. *Buxton v. Iowa Police Dep't,* 09–520 (La.10/20/09), 23 So.3d 275. Whether the burden of proof has been satisfied and whether testimony is credible are questions of fact to be determined by the WCJ. *Id.* Under the manifest error rule, the reviewing court does not decide whether the factfinder was right or wrong, but only whether its findings are reasonable. *Id.*

*II.     Applicable Law*

The court in *LaSalle v. City of Lake Charles*, 17-32, pp. 3-4 (La.App. 3 Cir. 5/24/17), 222 So.3d 148, 151-52 (quoting *Bollich v. Family Dollar Inc.*, 05-1459 (La.App. 3 Cir. 6/21/06), 934 So.2d 249, explained:

3

In a workers' compensation case, the claimant must establish a causal link between the work-related accident and the claimed disability. *Walton v. Normandy Village Homes Ass'n, Inc.*, 475 So.2d 320 (La.1985). To aid the employee in meeting this burden:

> [t]he employee's workplace accident is presumed to have caused or aggravated his disability when [he] proves that: (1) before the accident, [he] had not manifested disabling symptoms; (2) commencing with the accident, the disabling symptoms appeared; and (3) there is medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and activation of the disabling condition. Once an employee establishes the presumption of a [causal] relationship, the employer must produce evidence and persuade the trier of fact that it is more probable than not that the injury was not caused by the work accident. *Tate v. Cabot Corp.*, 01-1652, p. 6 (La.App. 3 Cir. 7/3/02), 824 So.2d 456, 461, *writ denied*, 02-2150 (La. 11/22/02), 829 So.2d 1044 (quoting *Rideaux v. Franklin Nursing Home*, 95-240, p. 5 (La.App. 3 Cir. 11/22/95), 664 So.2d 750, 755, *writ denied*, 95-3093 (La. 2/16/96), 667 So.2d 1058 (citations omitted)).

### III. *Assignment of Error Number One*

In the first assignment of error, CBI complains that the WCJ erred in finding that Ralph Weaver was entitled to indemnity benefits from February 7, 2017, to the present.

The evidence shows that CBI made the necessary accommodations, consistent with multiple doctors' recommendations of light duty work, in order for Ralph Weaver to work for them from when he returned from his injury until February 7, 2017. These accommodations were made until Weaver was forced to miss three days due to an infection in his knee as a result of an injection. When he returned to work after the three days, on February 7, 2017, he was told that CBI would no longer accommodate him. Weaver argues that he became eligible on February 7, 2017, for Supplemental Earnings Benefits (SEBs) when there was no

longer available employment fitting within his abilities which would allow him to earn at least ninety percent (90%) of his pre-injury wages.

CBI contends that Weaver was terminated for cause on February 7, 2017, and, therefore, Weaver is not entitled to SEBs. Weaver denies this claim. In finding that Weaver was entitled to SEBs, the WCJ stated:

> I find it ironic that in the personnel file there's an alleged termination letter but [Weaver] vehemently denies that he knew of the termination, that he knew that – the incident was not brought to him. In fact, he stated he never signed any termination papers. He has yet to receive termination papers in the mail as we speak today, so I don't know what is going on there. But based on my observation of claimant today, I find him to be forthright, honest. His demeanor, even when things were pointed out in his deposition, he owned up to it. He didn't try to backpedal or anything. He owned up to it, so I find him to be a credible witness in this, and based upon that, I'm going to once again, say that he entitled to [SEBs].

The WCJ clearly did not believe CBI's claim that Weaver was terminated for cause. She made a point to state that she found Weaver to be credible and honest when awarding him SEBs. Regardless, "[t]ermination does not destroy one's entitlement to SEB. To hold that an employee's termination destroys an employee injured on the job's entitlement to SEB would provide incentive for employers to allow injured employees to return to work and thereafter terminate them to avoid paying SEB." *Palmer v. Schooner Petroleum Servs.*, 02-397, p. 12 (La.App. 3 Cir. 12/27/02), 834 So.2d 642, 650, *writ denied*, 03-367 (La. 4/21/03), 841 So.2d 802 (citation omitted). Rather, "[t]he SEB statute does not permit a claimant to choose not to work and still collect SEB when he is physically able to work and jobs are available." *Blanchard v. Fed. Express Corp.*, 95-349, p. 13 (La.App. 1 Cir. 11/9/95), 665 So.2d 11, 13. The WCJ specifically found that "[Weaver] is not saying that he can't work at all. In fact, every time he went to the

5

doctor, he asked the doctor to release him back to work because he wanted to work."

"When a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong." *Chaisson v. Pellerin & Sons, Inc.*, 18-828, p. 4 (La.App. 3 Cir. 4/3/19), 269 So.3d 868, 871 (citing *Rosell v. ESCO*, 549 So.2d 840 (La.1989) and *Wilson v. Gen. Motors Corp.*, 45,232 (La.App. 2 Cir. 5/26/10), 37 So.3d 602). Based on the foregoing, we cannot find that the WCJ was unreasonable in awarding Weaver indemnity benefits. As such, this assignment lacks merit.

### IV. *Assignment of Error Number Two*

In assignment of error number two, CBI argues that the WCJ erred in finding Weaver did not commit fraud in violation of La.R.S. 23:1208 based on misrepresentations he made in discovery. Louisiana Revised Statutes 23:1208(A) states that "[i]t shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation." The provision goes on to state in Section E that "[a]ny employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter."

The court in *KLLM, Inc. v. Reed*, 00-295, p. 6 (La.App. 3 Cir. 10/11/00), 771 So.2d 728, 731 (citations omitted) explains:

> The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation (2) that is willfully made (3) for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law. Section 1208 is a broadly worded statute that applies to any false statements or

representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture.

"Because forfeiture of workers' compensation benefits is a harsh remedy, Section 1208 must be strictly construed." *Turner v. Chicago Bridge & Iron Co.*, 52,167, p. 7 (La.App. 2 Cir. 6/27/18), 251 So.3d 615, 622 (citing *Green v. Allied Bldg. Stores, Inc.,* 50, 117 (La. App. 2 Cir. 1/22/16), 185 So.3d 164, *writ denied*, 2016-0508 (La. 5/27/16), 192 So.3d 737). "False statements that are inadvertent or inconsequential will not result in forfeiture." *KLLM, Inc.*, 771 So.2d at 731. "Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error." *Id.*

CBI argues that Weaver made misrepresentations in his following written discovery responses received April 17, 2018:

**REQUEST FOR ADMISSION NO. 4**

Admit that you are or have been capable of working part time at any time since you last worked for CHICAGO BRIDGE & IRON (i.e., less than 40 hours per week).

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 5**

Admit that you are or have been capable of working full time since you last worked for CHICAGO BRIDGE & IRON (i.e., 40 hours per week or more).

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 6**

Admit that you have worked for yourself or anyone else since the last day you worked for CHICAGO BRIDGE & IRON.

**RESPONSE:**

Denied.

**REQUEST FOR ADMISSION NO. 7**

Admit that you have earned some wages since the last day you worked for CHICAGO BRIDGE & IRON.

**RESPONSE:**

Denied.

Weaver testified at trial that he has not been able to earn money since he lost his job with CBI. He stated that he tried to earn money, as he has equipment on his property and advertised on Facebook for jobs, but he never got any. He also stated that after a hurricane in Florida, he went there to help haul debris to the dump. He testified that he drove a pick-up truck with a trailer attached. He did this for four days. However, he testified that he was not paid.

CBI hired a private investigator to surveil Ralph Weaver. The surveillance revealed Weaver walking around his property, feeding his horse and using equipment on his property. Weaver has five steps up to his house, which the private investigator saw Weaver use numerous times during the day. Weaver also testified that he sings as a hobby every once in awhile. CBI contends that the actions of Weaver exceeds his physical restrictions and is evidence that he misrepresented his disability status in an effort to obtain disability benefits.

In her oral ruling, the WCJ stated:

Nothing that the private eye showed and testified to proved that [Weaver] misrepresented his condition. In fact, they could not - - with the 1020's he was required to fill out, they could not show any type of income that he was getting. They didn't produce any cancelled checks. They didn't see any money exchanging hands. In fact, he didn't even testify to the fact that he saw Mr. Weaver doing any type of job.

The WCJ found that "no evidence was presented to show that [Weaver] committed fraud pursuant to LA RS 23:1208." "The employer bears the burden of proving every element necessary to prove a violation of La.R.S. 23:1208[.]" *Nero v. Allied Waste Services*, 18-501, p. 16 (La.App. 3 Cir. 2/6/19), 265 So.3d 1129, 1141. The WCJ determined that CBI did not carry its burden. The standard of review does not allow us to overturn this ruling if a reasonable basis exists. We find the WCJ's ruling on this issue has a reasonable basis and will not disturb the judgment. This assignment lacks merit.

V.   *Assignment of Error Number Three*

In assignment of error number three, CBI argues that the WCJ erred in finding Weaver did not commit fraud in violation of La.R.S. 23:1208.1 based on the evidence presented at trial. Louisiana Revised Statutes 23:1208.1 states:

> Nothing in this Title shall prohibit an employer from inquiring about previous injuries, disabilities, or other medical conditions and the employee shall answer truthfully; failure to answer truthfully shall result in the employee's forfeiture of benefits under this Chapter, provided said failure to answer directly relates to the medical condition for which a claim for benefits is made or affects the employer's ability to receive reimbursement from the second injury fund. This Section shall not be enforceable unless the written form on which the inquiries about previous medical conditions are made contains a notice advising the employee that his failure to answer truthfully may result in his forfeiture of worker's compensation benefits under R.S. 23:1208.1. Such notice shall be prominently displayed in bold faced block lettering of no less than ten point type.

In *Nabors Drilling USA v. Davis*, 03-136, pp. 5-6 (La. 10/21/03), 857 So.2d 407, 414, the supreme court explained:

> Forfeiture is a harsh remedy; therefore, statutory forfeiture provisions such as LSA–R.S. 23:1208.1 must be strictly construed. *Wise v. J.E. Merit Constructors, Inc.,* 97–0684 (La.1/21/98), 707 So.2d 1214, 1218. By its express terms, LSA–R.S. 23:1208.1 provides for forfeiture under three circumstances. There must be (1) an untruthful statement; (2) prejudice to the employer; and (3) compliance with the notice requirements of the statute. *Id., citing*

*Resweber v. Haroil Const. Co.,* 94–2708, 94–3138 (La.9/5/95), 660 So.2d 7. The employer has the burden of proving each of the elements required by the statute. *Wise*, 707 So.2d at 1218. The lack of any one of the elements is fatal to the employer's avoidance of liability under the statute. *Id.*

CBI asserts that Weaver committed fraud pursuant to La.R.S. 23:1208.1 because he failed to accurately disclose his pre-existing condition on the LA OWCS Second Injury Board Knowledge Questionnaire at the time he was hired on May 19, 2016. It is CBI's contention that Weaver committed fraud by checking "No" on the questionnaire to a question about whether he had ever suffered from arthritis, another question about whether he had undergone a surgical procedure, and, lastly, whether a doctor had ever restricted his activities. CBI alleges that it is clear from his medical history, that these answers were not accurate and constitute untruthful statements under the statute.

While it is true that Weaver checked "No" to these questions, later in the questionnaire, more comprehensive questions are asked which include lines for the employee to write in detailed answers. In answer to the question, "Have you ever had an on the job accident?," Weaver answered "Yes." He further listed the date of the injury as "2-11-11" and the nature of the injury as "torn maniskes [sic]." He listed the name of his employer at the time of the injury and answered eight months to the question, "How long were you on compensation." In addition to the LA OWCS Second Injury Board Knowledge Questionnaire, Weaver also submitted a Medical Examination Report Form to CBI on the same day. On this form, Weaver disclosed that he had surgery "on my leg, finger & elbow."

Regarding CBI's claim of fraud under La.R.S. 23:1208.1, the WCJ stated in her oral ruling:

10

[T]he [LA OWCS Second Injury Board Knowledge Questionnaire], he told about his meniscus. He told about his finger. He told about his workers' comp claim. There was no question on there that asked Mr. Weaver, "how many comp claims have you had? How many meniscus tears have you had?" If they truly needed to get into that, the person that had him fill out the forms should have went over it and said, "look, you've got a conflict here. You told us you had a meniscus tear. You told us you had a workmen's comp claim. Is that it?" There's no injury [sic] for him to specify exactly how many comp claims he had, exactly how many meniscus tears, exactly how many injuries he had. They just asked him if he had them. He acknowledged he had them. So, I don't believe they have met the burden of proving the 1208.1 fraud here.

"[I]t is not every untruthful statement on a medical history questionnaire that will result in the forfeiture of workers' compensation benefits for a subsequent work-related injury. It is only those statements that rise to the level of meeting the statutory proviso of LSA–R.S. 23:1208.1 that will subject the employee to forfeiture." *Nabors Drilling USA*, 857 So.2d at 414-15. The WCJ found that Weaver did not intentionally misinform CBI about his pre-existing condition. In fact, later in the questionnaire, Weaver detailed his previous injuries, including the date and nature of said injuries. As such, we cannot find that the WCJ was unreasonable in finding that Weaver did not commit fraud pursuant to La.R.S. 23:1208.1. This assignment lacks merit.

VI.    *Assignment of Error Number Four*

Finally, CBI argues that the WCJ erred in awarding penalties and attorney's fees in this case. CBI contends that it reasonably controverted Weaver's claim. "A WCJ's decision to cast an employer with penalties and attorney fees is a question of fact which will not be reversed on appeal absent manifest error." *Harris v. Twin City Elec., LLC*, 12-88, p. 5 (La.App. 3 Cir. 6/6/12), 92 So.3d 649, 653, *writ denied*, 12-1582 (La. 10/12/12), 98 So.3d 876 (citing *Ashworth v. Administaff, Inc.,* 10–318 (La.App. 3 Cir. 10/6/10), 48 So.3d 1178).

The WCJ found that "based on the testimony and evidence, Chicago Bridge and Iron was arbitrary and capricious in controverting [Weaver's] claim for benefits." The WCJ awarded Weaver two thousand dollars ($2,000.00) in penalties and eight thousand dollars ($8,000.00) in attorney's fees. We find there is evidence which shows CBI did not reasonably controvert Weaver's claim. CBI accommodated Weaver's work restrictions for five months after his injury. When he returned to work after an infection, he was told they would no longer accommodate him. The WCJ rejected CBI's argument that he was terminated for cause. We find the WCJ was reasonable in her determination to award penalties and attorney's fees.

VII.   *Attorney's Fees on Appeal*

In his Answer to appeal, Weaver requests attorney's fees for work done on appeal. We grant this request.

"Generally, when an award for attorney fees is granted at a lower court level, additional attorney fees are proper for work done on appeal. This is to keep the appellate judgment consistent with the underlying judgment." *Wilczewski v. Brookshire Grocery Store*, 08-718, p. 18 (La.App. 3 Cir. 1/28/09), 2 So.3d 1214, 1226, *writ denied*, 09-456 (La. 4/13/09), 5 So.3d 170.

After a review of the record, we find that an award of four thousand dollars ($4,000.00) is reasonable.

## CONCLUSION

The judgment of the workers' compensation court is affirmed. Ralph Weaver is awarded $4,000.00 in attorney's fees for work done on appeal. Costs associated with this appeal are assessed to Chicago Bridge & Iron.

**AFFIRMED.**